**RADIO CORPORATION OF AMERICA et al. v. RADIO ENGINEERING LABORATORIES, Inc.**

**No. 5580.**

District Court, E. D. New York.

Aug. 29, 1932.

Sheffield & Betts, of New York City, for plaintiffs Radio Corporation of America and American Telephone & Telegraph Co.

Darby & Darby, of New York City, for plaintiff De Forest Radio Co.

Thomas G. Haight, of Jersey City, N. J., and Samuel E. Darby, Jr., and James J. Cosgrove, both of New York City, of counsel, for plaintiffs.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis and George E. Faithfull, both of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is an action brought to secure relief by injunction and damages for the alleged infringement of patent No. 1,507,016, issued to Lee De Forest, assignor to De Forest Radio Telephone & Telegraph Company, for Radio Signaling System, dated September 2, 1924, on an application filed September 23, 1915; and of patent No. 1,507,017, issued to Lee De Forest, assignor to Radio Telephone & Telegraph Company, for Wireless Telegraph & Telephone System, dated September 2, 1924, on an application filed March 20, 1914.

The plaintiff Radio Corporation of America has rights under the patents in suit, including an exclusive license in the field in which the defendant is alleged to be infringing, and the plaintiffs American Telephone & Telegraph Company and De Forest Radio Company hold other exclusive right and title under the said patents.

The plaintiffs are corporations and have sufficient right, title, and interest in the patents in suit to enable them to maintain this suit.

The defendant is a New York corporation, doing business in the borough of Queens, city of New York, and is there engaged in the manufacture and sale of radio transmitting and receiving apparatus, charged in this suit to infringe.

Mr. Armstrong, whose patent rights in patent No. 1,113,149 were acquired by the Westinghouse Electric & Manufacturing Company, is actually defending this suit and paying the expenses thereof, and while his purpose undoubtedly is to endeavor to again try out the issue of priority of invention between him and Dr. De Forest, we must not lose sight of the fact that this is simply a suit for infringement, to be determined on the law and the facts.

The patent in suit No. 1,507,016 is for the invention known as the "oscillating audion," and the patent in suit No. 1,507,017

is for the invention known as the "feed back circuit."

The invention in issue was a tremendous improvement in radio signaling systems. It increased the sensitiveness of the audion radio receiver hundreds of times, and its fundamental value as a regenerator of radio frequency currents in radio transmission systems, and in high frequency carrier current telephony is great.

The invention of patent No. 1,507,017 in suit, known as the "feed back circuit," is a general type of circuit employed with the three-electrode vacuum tube or audion, wherein current flowing in the plate filament or "output" circuit of the audion is fed back to the grid filament or "input" circuit thereof, so that the audion acts over and over again upon the same current, amplifying it each time it passes through the tube. Such action of the audion with its feed back circuit is also referred to as regenerative action. The employment of such regenerative action beyond a predetermined extent, for example, to the maximum extent, causes the audion with its feed back circuit to become a source of continuous oscillations, the audion becoming a generator of alternating currents, which are sustained in the sense that the generation thereof continues until the circuit is altered, or the audion tube becomes inoperative.

The invention of patent No. 1,507,016 in suit is the audion with its feed back circuit and instrumentalities adjusted to produce sustained oscillations known as the "oscillating audion" or "audion oscillator."

This suit is based upon claims 24, 25, 26, 27, and 28 of patent No. 1,507,016, which are broadly defined as methods and means for producing sustained electrical oscillations, or electrical alternating currents; and claims 15, 17, 18, 19, 20, and 21 of patent No. 1,507,017, claims 15, 17, and 18 being defined as "In a radio signaling system," and claims 19, 20, and 21, as "In an electrical system."

The defendant prior to the filing of the bill herein made and sold a wireless transmitter, Exhibit 3, and a wireless receiver, Exhibit 4. The said transmitter, Exhibit 3, employs an oscillating audion producing continuous electrical oscillations in the manner disclosed and claimed in patent No. 1,507,-016 in suit, by virtue of a feed back circuit arrangement disclosed in patent No. 1,507,-017 in suit.

In the said transmitter the electrical coupling of the output and input circuits of the oscillating audion is of the electrostatic or condenser type, sometimes referred to as a capacity coupling, and the feed back is accomplished by a variable, tuned plate circuit, so that the plate potential is effective across the capacity coupling within the tube and energy is fed back to the grid circuit.

The said receiver, Exhibit 4, embodies the feed back or regenerative circuit of the two patents in suit, the feed back being of the tickler type, in which the coupling between the input and output circuits is effected inductively.

The receiver may be so adjusted when in use that the feed back effected is just below the amount necessary to reach the point of generation of continuous oscillations, and the apparatus may be employed to receive radio signals of the damped wave type, or it may be so adjusted that the maximum feed back is effected and the audion system becomes a source of continuous oscillations, and the apparatus may be employed to receive radio signals of the continuous wave type, which last-mentioned method of reception is known as the "beat" or "heterodyne" method.

It was admitted that defendant's apparatus contains the regenerative or feed back circuits, and that oscillations are produced thereby.

The claims of the patents in suit upon which this suit is based are infringed by defendant's transmitter and receiver, Exhibits 3 and 4, except that claim 24 of patent No. 1,507,016 in suit, calling for an inductive coupling between the circuits, is not infringed by the transmitter, Exhibit 3, but is infringed by the receiver, Exhibit 4.

Before proceeding to consider the defenses interposed by the defendant in this suit, we must consider the following prior adjudications involving the invention of the patents in suit, to determine whether and to what extent such adjudications are binding authority upon this court and the defendant in this suit:

(1) An interference proceeding in the Patent Office involving patent applications which had been filed by (a) Armstrong (whose patent rights were acquired by the Westinghouse Electric & Manufacturing Company); (b) De Forest (whose rights were owned by the De Forest Radio Company and American Telephone & Telegraph Company); (c) Langmuir (whose rights were owned by the General Electric Company); and (d) Meissner (a German inventor whose rights were taken over by the Alien Prop-

erty Custodian, whose interests were represented by the government.

This interference proceeding reached the Court of Appeals for the District of Columbia, which found that De Forest was the prior inventor. De Forest v. Meissner, 54 App. D. C. 391, 298 F. 1006. As a result the two patents in suit issued to De Forest.

(2) During the pendency of the said interference controversy before the Patent Office tribunals, and before it was decided by the Court of Appeals for the District of Columbia, the Armstrong patent, No. 1,113,-149 (which was not expressly involved in the interference proceedings, a supplemental application of Armstrong for the oscillating audion being directly involved in that proceeding), was the basis of an infringement suit brought by Armstrong and the Westinghouse Company against the De Forest Company, in the Southern District of New York. There was interposed in that case, among others, the defense that De Forest was the prior inventor of the subject-matter of the Armstrong patent. Judge Mayer overruled this defense and found certain claims of the Armstrong patent to be valid and to have been infringed by certain audion heterodyne receiving apparatus manufactured by the De Forest Company (Armstrong v. De Forest Radio Telephone & Telegraph Co., 279 F. 445), and was affirmed by the Circuit Court of Appeals for the Second Circuit (280 F. 584).

(3) Thereafter a number of suits were brought on the Armstrong patent, in the Southern District of New York, including Westinghouse Electric & Mfg. Co. v. Independent Wireless Tel. Co. (D. C.) 300 F. 748, and Westinghouse Electric & Mfg. Co. v. Taub, 4 F. (2d) 605, in which the apparent discrepancy between the opinions of the Court of Appeals of the District of Columbia and Circuit Court of Appeals of the Second Circuit, as to priority of invention, was considered. In each of those cases the court held that, until the Supreme Court decided the controversy, the decision of the Circuit Court of Appeals for the Second Circuit was controlling on them.

The question of priority of invention was not in issue in Westinghouse Electric & Mfg. Co. v. Royal-Eastern Electrical Supply Co., 9 F. (2d) 397, decided by this court.

(4) Meissner, one of the unsuccessful parties in the interference proceeding, filed a suit in the District Court of Delaware, under section 4915, R. S. (35 USCA § 63), to procure a decree that the Commissioner of

Patents, notwithstanding the adverse decisions of the Court of Appeals for the District of Columbia, grant to him a patent for the invention. De Forest, Armstrong, and Langmuir (with their assignees) were named as defendants in the case. Armstrong and Langmuir filed answers including counterclaims, and each prayed for a decree directing the Commissioner of Patents to issue a patent to him for the invention. De Forest and his assignee, as well as the American Telephone & Telegraph Company, filed answers to the original bill and replies to the counterclaims, affirmatively asserting that De Forest was the first inventor of the subject-matter.

(5) After the issuance of the De Forest patents, the De Forest Company, as assignee thereof, filed a suit under section 4918, R. S. (35 USCA § 66), in the District Court for the Eastern District of Pennsylvania, against the Westinghouse Company, the assignee of Armstrong. This bill charged that the De Forest patents and the Armstrong patent, No. 1,113,149, were interfering patents within the meaning of section 4918, R. S., and prayed for a decree invalidating and canceling the Armstrong patent, because De Forest was the prior inventor of the subject-matter thereof. The Westinghouse Company filed an answer denying invention by De Forest, setting up the decree in the New York case as res adjudicata, and that De Forest patent, No. 1,507,017 was void as to all subject-matter thereof which was common to the Armstrong patent, because it was not filed within two years after the grant of the Armstrong patent. The case was tried before Judge Thompson, who held (De Forest Radio Telephone & Telegraph Co. v. Westinghouse Electric & Mfg. Co., 13 F. (2d) 1014) that the De Forest patents, as to the claims in issue in this suit, and the Armstrong patent, as to claims 1, 2, 3, 5, 8, 9, 12, 14, 15, 16, 17, and 18 thereof, were interfering patents under section 4918, R. S.; that De Forest was the first and original inventor of the claims in issue of the patents in suit; and that those claims had not been anticipated by Armstrong.

That the additional evidence of the Westinghouse Company in its defense of the case had not overcome the evidential effect of the decision of the Court of Appeals of the District of Columbia, under the rule of Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657, and that the interfering claims of the Armstrong patent were void and should be canceled.

(6) Thereafter the case in the District of

Delaware came on for trial on the stipulated record in the Philadelphia suit and additional evidence offered on behalf of Meissner and Armstrong, before Judge Morris, who held (U. S. v. De Forest Radio Telephone & Telegraph Co., 18 F.(2d) 338) that the plaintiffs and counterclaimants in the action had not adduced new evidence of the character and amount necessary to overcome the evidential effect of the decision of the Court of Appeals of the District of Columbia, under.the rule of Morgan v. Daniels; and that on all the evidence De Forest was the first inventor of the subject-matter of his patents, and that the award to him of priority of invention by the Court of Appeals of the District of Columbia was correct, and this irrespective of the rule of Morgan v. Daniels.

(7) Appeals were taken by Armstrong and Westinghouse in both the Delaware and Philadelphia cases, and by the United States in the Delaware case, to the Circuit Court of Appeals for the Third Circuit, which court affirmed the decrees of both District Courts (Westinghouse Electric & Mfg. Co. v. De Forest Radio Telephone & Telegraph Co., 21 F.(2d) 918), and held that new evidence had not been adduced of the character required to overcome the effect of the decision of the Court of Appeals of the District of Columbia, under the rule of Morgan v. Daniels; that independently of the decision of the Court of Appeals of the District of Columbia, the evidence established that De Forest was the first inventor of the subject-matter of his patents, and conceived the invention thereof, and reduced it to practice on August 6, 1912, and that the De Forest patents and Armstrong patent were, as to the claims above mentioned, interfering patents within the meaning of section 4918, R. S., and that the claims mentioned of the Armstrong patent should be canceled as invalid and void.

(8) Armstrong and the Westinghouse Company then petitioned the Supreme Court, in both cases, for a writ of certiorari directed to the Circuit Court of Appeals for the Third Circuit, asserting among other grounds therefor the diversity of opinion between the Circuit Court of Appeals for the Third Circuit and the Circuit Court of Appeals for the Second Circuit, on the issue of priority of invention between De Forest and Armstrong. Certiorari was granted by the Supreme Court (Westinghouse Electric & Mfg. Co. v. De Forest Radio Telephone & Telegraph Co., 276 U. S. 610, 48 S. Ct. 302, 72 L. Ed. 730), and the cases were argued before that court, which affirmed the Circuit Court of Appeals

of the Third Circuit, upon the authority of Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657, and Victor Talking Machine Co. v. Brunswick-Balke-Collender Co., 273 U. S. 670, 47 S. Ct. 474, 71 L. Ed. 832. Westinghouse Electric & Mfg. Co. v. De Forest Radio Telephone & Telegraph Co., 278 U. S. 562, 49 S. Ct. 34,.73 L. Ed. 507. A petition for rehearing was denied.

(9) The present plaintiffs, in January, 1930, instituted suit in the District Court of Delaware against the Universal Wireless Communication Company, for infringement of the same claims of the two De Forest patents as are in issue here. Judge Morris, after a hearing on affidavits filed by both parties, granted a preliminary injunction, and thereafter, on a trial on the merits before him, granted an interlocutory decree holding the patents in suit valid and infringed.[1] No appeal was taken.

■ A consideration of these cases leads me to the conclusion that as to Mr. Armstrong, the decisions of the Supreme Court, the Circuit Court of Appeals, and the District Courts of the Third Circuit, are res adjudicata; but it seems to me that they are not res adjudicata as to the defendant.

I cannot, however, as defendant suggests, limit the effect of those decisions, especially that of the Supreme Court, to strengthening the presumption of validity of the patents in suit to the extent to which the decision carries conviction.

The Supreme Court, in Victor Talking Machine Co. v. Brunswick-Balke-Collender Co., 273 U. S. 670, 47 S. Ct. 474, 71 L. Ed. 832, which was a suit under section 4918, did not base its decision solely on Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657, which was a suit under section 4915, but also on United States v. State Investment Co., 264 U. S. 206, 211, 44 S. Ct. 289, 68 L. Ed. 639; Brewer Co. v. United States, 260 U. S. 77, 86, 43 S. Ct. 60, 67 L. Ed. 140; Bodkin v. Edwards, 255 U. S. 221, 223, 41 S. Ct. 268, 65 L. Ed. 595; National Bank of Athens v. Shackelford, 239 U. S. 81, 82, 36 S. Ct. 17, 60 L. Ed. 158; Wright-Blodgett Co. v. United States, 236 U. S. 397, 402, 35 S. Ct. 339, 59 L. Ed. 637; Washington Securities Company v. United States, 234 U. S. 76, 78, 34 S. Ct. 725, 58 L. Ed. 1220; Texas & Pacific Company v. Louisiana Railroad Commission, 232 U. S. 338, 339, 34 S. Ct. 438, 58 L. Ed. 631; Chicago Junction Railway Company v. King, 222 U. S. 222,

[1] No opinion.

224, 32 S. Ct. 79, 56 L. Ed. 173; Page v. Rogers, 211 U. S. 575, 577, 29 S. Ct. 159, 53 L. Ed. 332; Dun v. Lumbermen's Credit Ass'n, 209 U. S. 20, 24, 28 S. Ct. 335, 52 L. Ed. 663, 14 Ann. Cas. 501; and Charleston, South Carolina, Mining & Mfg. Co. v. United States, 273 U. S. 220, 47 S. Ct. 348, 71 L. Ed. 618.

The only case cited by the Supreme Court in Victor v. Brunswick, supra, which was brought under section 4915 or section 4918, was Morgan v. Daniels, supra; the others were cases at law or in equity, in all of which the Supreme Court had followed its rule that concurrent findings of fact of the lower courts will be accepted and not disturbed unless clear or plain error appears on a review of the record.

In some of the cases so cited in the decision in Victor v. Brunswick, supra, the Supreme Court in its opinion had recited the evidence, and in others it had stated that it was not necessary so to do.

Whether the Supreme Court intended to base its decision on the rule that concurrent findings of fact of the lower courts will be accepted and not disturbed, or not, does not change the fact that this court, on substantially the same evidence, would be obliged to follow the Supreme Court.

Under the circumstances it seems to me that the Supreme Court must have reviewed the evidence before both the Circuit Court of Appeals for the Second Circuit, and the Circuit Court of Appeals for the Third Circuit, because the diversity of their opinions was the principal ground of the application for certiorari, and having determined that the decision of the Third Circuit Court of Appeals was right, accepted the concurrent finding of facts of the courts of the Third Circuit. This of necessity included the finding that De Forest made the invention of the claims in issue of the patents in suit, that those claims were patentable, and that they were not anticipated by the Armstrong patent. In any event, on all of the evidence, it accorded priority to De Forest of the invention of the patents in suit.

■ Of course, this court is bound to follow the Circuit Court of Appeals of this circuit on questions of validity or construction and infringement of a patent, where there is no materially new evidence, unless the Supreme Court has rendered a different decision, in which case this court is bound to follow the Supreme Court. Lektophone Corp. v. Miller Brothers Co. (D. C.) 37 F.(2d) 580.

We must not lose sight of the fact that certiorari was granted by the Supreme Court on a petition which cited, among other grounds, the diversity of opinion between the Circuit Court of Appeals for the Third Circuit and the Circuit Court of Appeals for the Second Circuit, on the issue of priority of invention between De Forest and Armstrong.

■ On the evidence before the Supreme Court, priority of invention was accorded to De Forest over Armstrong, and unless new evidence is presented in the instant suit which this court believes would have changed the opinion of the Supreme Court in the former suit, this court is bound to follow the opinion of the Supreme Court. American Bell Tel. Co. v. Wallace Electric Tel. Co. (C. C.) 37 F. 672; Birmingham Cement Mfg. Co. v. Gates Iron Works (C. C. A.) 78 F. 350; Westinghouse Air Brake Co. v. Christensen Engineering Co. (C. C.) 113 F. 594, 595; American Bell Tel. Co. v. Southern Tel. Co. (C. C.) 34 F. 795, 796; American Bell Tel. Co. v. McKeesport Tel. Co. (C. C.) 57 F. 661; American Middlings Purifier Co. v. Christian, 1 Fed. Cas. page 683, No. 307.

There is no reason to believe that on the same evidence the Supreme Court would change its opinion, and this court cannot assume that it would do so.

The defendant is entitled to its day in court and to a consideration of all the evidence to determine whether on all of the evidence presented there is materially new evidence which would warrant this court in believing that if such evidence had been before the Supreme Court, it would have changed the opinion of that court.

It does not seem to me that the authorities cited by the defendant entitle it to a more favorable rule.

All the rights given by section 4914, R. S. (35 USCA § 62), are preserved, and the defendant may offer any evidence that it may have, and it is not concluded by prior decisions (Reckendorfer v. Faber, 92 U. S. 347, 352, 23 L. Ed. 719; Butterworth v. Hoe, 112 U. S. 50, 60, 5 S. Ct. 25, 28 L. Ed. 656; Frasch v. Moore, 211 U. S. 1, 9, 10, 29 S. Ct. 6, 53 L. Ed. 65), but may offer proof of knowledge or invention by another prior to the applicant's filing date, and thus overcome the presumption that the patentee was the first inventor; and the patentee must then show to the satisfaction of the court that he is in fact the first inventor (Clark, etc., v. Willimantic, etc., Co., 140 U. S. 481, 492, 11 S. Ct. 846, 35 L. Ed. 521; New Eng-

land, etc., Co. v. B. F. Sturtevant Co. [C. C. A.] 150 F. 131); but if no new evidence is offered, and the evidence offered does not materially differ from that in the case decided by the Supreme Court, then the opinion of that court must be followed; and this seems to be in accord with the opinion in Thacher v. Town of Falmouth (C. C. A.) 241 F. 869, 871, 872.

There must be some finality, even in patent litigation, where in a number of cases the evidence is substantially the same, and that applies with great force to this suit, because if materially new evidence has not been presented on this trial, which was not before the Supreme Court, then the opinion of that court is and should be final, upon the question of invention and priority of invention in this suit.

However desirable it may be to establish the date of invention once for all, I can find no authorities which sustain the contention of the plaintiffs that by virtue of the Supreme Court decision, the prima facie date of invention of the patents in suit is August 6, 1912; on the contrary, it appears to me that the date of invention is a question of fact to be proven on the trial of the instant suit, and if the evidence is the same as in the former suit before the Supreme Court, and no materially new evidence is offered, then the opinion of the Supreme Court as to the date of invention is binding on this court.

We will now consider, in the order named, the defenses on which defendant relies.

1. Defendant attacks the validity of both patents on the ground that the invention therein disclosed and claimed, and which defendant is charged with appropriating, was invented by Armstrong before it was invented by De Forest.

2. The validity of patent No. 1,507,017 is further attacked on the ground that the subject-matter thereof is not the sole invention of De Forest, but is the joint invention of De Forest and Logwood, and has been patented to De Forest and Logwood in their earlier patent No. 1,170,881, of February 8, 1916.

Considering the first defense, prior invention, it appears that the application for De Forest patent, No. 1,507,017, was filed March 20, 1914, and the application for De Forest patent, No. 1,507,016, was filed September 23, 1915.

The application for the Armstrong patent, No. 1,113,149, was filed October 29, 1913, and while it is disputed that the completion of the invention disclosed and claimed in Armstrong's patent was as early as January 31, 1913, no new evidence was offered on that phase of the case, and that was the date accorded to Armstrong by the courts of this circuit, which the Supreme Court did not disturb.

Therefore the question at issue under this defense is whether De Forest made the invention prior to January 31, 1913.

Some contentions can be disposed of before entering into a consideration of the evidence as it relates to the first defense.

The suggestion that the attitude of mind of counsel and the judgment of the courts may have been affected thereby as the interests of the litigating parties in the Third Circuit were substantially merged, does not impress me as being worthy of further consideration, in view of the length and expense of the litigation in the Third Circuit, which finally reached the Supreme Court, the high character of counsel engaged, the fact that Mr. Armstrong individually was represented, and the learning and experience of the judges.

I believe that De Forest throughout the whole litigation on the patents in suit has honestly endeavored to sustain his claim to be the first inventor of the inventions of the patents in suit, and has been assisted by witnesses, likewise moved by an honest desire to see justice done, and not acting pursuant to a well-conceived plan to deprive Mr. Armstrong of anything which rightfully belonged to him.

The inventions of both patents in suit relate to audio and radio frequency. If this was not so and the invention therein disputed had been some radio application of the oscillating audion, why was the issue framed in the Patent Office in the interference proceeding broadly, an electrical invention for the generation of alternating currents, irrespective of the frequency of the currents generated, and why did Armstrong, if he did not believe that was his invention, or believed that it was unpatentable, continue the contest?

At the outset of the consideration of defendant's contention, it seems to me that there is nothing new in the testimony of the defendant's expert Farrand, which would change the opinion of the Supreme Court, as the same type of testimony, advancing the same opinion, was given by John V. L. Hogan in the Philadelphia case, and by Edward H. Loftin, in the Delaware case, and was before the Supreme Court, and it is the substance of the testimony and not the individ-

uality of the witness with which, in this instance, we are concerned.

The contention of the defendant that the Van Etten and De Forest laboratory notebook entries of August, 1912, disclose only audible frequency "singing," and do not disclose or suggest the invention here in controversy, seems to me to be the same contention advanced in the Third Circuit, and which was before the Supreme Court, and there determined adversely to the present contention of defendant.

The defendant seems to me to be in error in its contention that the invention of De Forest was based on the mere observation of the "singing" (audible oscillation) of an audion caused by the inherent feed back arising from the reactive connections which are always present in certain types of telephone circuits and in multistage audio frequency amplifiers.

Uncontrolled feed back of the generic type was known to exist prior to the invention of the patents in suit.

There is no doubt in the mind of this court that regenerative feed back is something more than the inherent generic feed back in a telephone repeater circuit, or a multistage audible frequency amplifier; but the defendant's contention that the "singing" disclosed in the Van Etten and De Forest 1912 notebooks was caused by inherent generic feed back, is the same contention that was raised in the cases in the Third Circuit and in the Supreme Court, and determined adversely to defendant.

The Court of Appeals of the Third Circuit found that what De Forest invented was a feed back circuit by which the currents in the plate or output circuit of an audion could be fed back into the grid or input circuit thereof, to the extent that alternating currents could be generated, and was sustained by the Supreme Court.

An audion generator, i. e., maximum feed back, cannot be produced without having a feed back circuit.

The circuit shown in the Van Etten notebook of August 6th was an inductively coupled feed back circuit, due to the proximity of coil No. 4 to coil No. 5, and the demonstration thereof at that time showed how the generation of oscillations could be controlled within wide limits.

The experiment recorded in the Van Etten notebook of August 6th was not accidental but was deliberately undertaken to determine what might be done with the equipment and

circuit then available to produce musical tones and alternating currents, and this is also true of the experiment recorded in the notebook of August 29th.

Van Etten did not, as defendant suggests, have the typical reactive connections of an unbalanced telephone repeater circuit, and accidentally find that the audion, when used as a telephone repeater, would "sing" or oscillate at audio frequencies, due to the inherent and objectional feed back of the telephone repeaters.

The inventions in controversy were not limited to the feeding back of radio frequencies, but have to do with the use of the feed back circuit for the production of electrical oscillations by feeding back current of any frequency.

I cannot find, as defendant contends, that the probabilities are against De Forest ever having seen the August 6, 1912, entry, as in my opinion the evidence is to the contrary.

The failure of De Forest, in his published articles in which he referred to his earlier patents and various notebook entries, to refer to the August 6th entry in Van Etten's notebook, is fully explained by the fact that such notebook was not in the possession of De Forest, and did not come into his possession until it was produced by Van Etten and was offered in evidence in the interference proceedings in September, 1919.

There is nothing new in the testimony of Mr. Bucher in this case which has not been covered in the cases in the Third Circuit and before the Supreme Court, except his conversation with De Forest, which I consider immaterial and unimportant.

The defendant's contention with reference to the Meissner circuit requires no consideration at this time, as the facts with reference to the same will be discussed later.

The defendant's contention that the inductive feed back coupling of the August 29th demonstration rests wholly on the unsupported testimony of De Forest, and that Van Etten's testimony does not corroborate him, is not sustained.

The testimony of Van Etten, "all sorts of whistles and musical notes of various pitches and intensities," referred to by defendant to sustain its contention that such hints as the entries of the notebooks give as to the nature and cause of the phenomenon, indicate that it is a characteristic of the double audion as such, not dependent on the circuits with which it is associated, had nothing to do with the August 6th and 29th cir-

cuits but relates to what occurred one evening in April or May, 1912, when nothing was said about the use of a double audion and Van Etten did not know what circuits were being used.

The inference which defendant seeks to draw from a quotation from De Forest's notebook, "The period of oscillation is quite independent of electrical constants of the circuit," that De Forest could not have had the feed back circuit adjusted, because in such a circuit the period of oscillation does depend upon the electrical constants of the circuit, cannot properly be drawn. The quotation does not refer to the circuit with which we are concerned. De Forest was engaged in further experiments.

All of these arguments based on evidence not materially different were before the Supreme Court.

De Forest and his assistants knew that the period of oscillations in any circuit depended upon the inductance and capacity of the circuit, but to sustain the De Forest claim to the invention, it is immaterial whether he completely or exactly understood the operations of the circuits of August 6th and August 29th, and or the operation of the audion therein. Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 435, 31 S. Ct. 444, 55 L. Ed. 527.

The evidence introduced on defendant's behalf by oral testimony at the trial, with reference to the observation of "singing," does not convince me that the De Forest notebooks are not of evidential value, and that De Forest's claim to conception in 1912 must stand, if at all, on the oral testimony.

The "singing" which was inherent was that observed by De Forest in April or May, 1912. The "singing" observed in August, 1912, was that deliberately produced by the feed back circuit described in the notebooks.

Neither Messrs. Lindridge, Bucher, Arnold, nor Jewett are shown to have had knowledge of the "singing" audion prior to August, 1912, nor had any one prior to that date used the audion in a telephone repeater or as a cascade amplifier.

The testimony of Mr. Clark in this case as to the demonstration at Arlington by Mr. Elwell, late in the fall of 1912, presents nothing new, as the whistling, howling, and singing of the De Forest and Federal Company amplifiers was in evidence in the Third Circuit case and before the Supreme Court.

The Supreme Court had before it the argument now made by the defendant that the "singing" phenomenon in the prior art and subsequent audion amplifiers did not suggest the invention to the art, and I do not find that the oral evidence in this case lends support to defendant's contention. On the contrary, the fact that those skilled in the telephone art gained no knowledge from the inherent "singing" phenomenon, and that the telephone art, including the Lindridge publication of September, 1912, saw nothing of value in such "singing," but a difficulty of which it was desirable to be rid, and that the engineers of the telephone company did not perceive of the use of the audion, including the oscillation generation use, seems to me to show the merit of the invention by De Forest of the feed back circuit and the oscillator.

Neither does it seem to me that the failure of De Forest to disclose his oscillation invention to telephone engineers in any way casts doubt upon his claim of invention, as the telephone engineers were interested only in the capability of the audion for use as a telephone repeater, and in fact De Forest to some extent balanced out the "singing" in his telephone repeater which he sold to the telephone company.

De Forest was the inventor of the audion and was experimenting to extend its field of usefulness when, in April or May, 1912, he observed the "singing" or oscillating by gas action, and that such "singing" or oscillation might be made practically useful in the radio art, if the audion could be reliably made to oscillate.

The notebooks offered in evidence by the plaintiffs are authentic, and the low frequency oscillations which De Forest had in August, 1912, were then useful, and an audio frequency oscillator is now useful in a radio receiving system.

■ De Forest or his assignees are entitled to all the uses and purposes to which his invention may be applicable. Roberts v. Ryer, 91 U. S. 150, 157, 23 L. Ed. 267; Stow v. Chicago, 104 U. S. 547, 550, 26 L. Ed. 816; Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U. S. 358, 369, 48 S. Ct. 380, 72 L. Ed. 610; Westmoreland Specialty Co. v. Hogan (C. C. A.) 167 F. 327.

The argument advanced on behalf of defendant based on the De Forest lecture of December 3, 1913, and the Armstrong paper of March, 1915, was also advanced before the Third Circuit Court of Appeals and the Supreme Court; but it seems to me to be immaterial. It is not what De Forest knew about the theory or scientific principle of the

arrangement of August 6, 1912, or that there were radio frequency currents in the plate circuit, which was important; it was sufficient that the means were novel and produced a new and useful result and could be reproduced at will, which was done at the Delaware trial.

The testimony of Mr. Van Etten clearly shows that De Forest did see, in the summer of 1912, the possibility of producing alternating currents, and discussed the possibility of using the audion as a generator, to be used with a heterodyne method of reception for producing musical notes.

The affidavit of Mr. Weagant and the argument of counsel for the De Forest Company, in the so-called "D–17 litigation," do not appear to me to be inconsistent with plaintiffs' present position, nor is the subject-matter of Weagant's affidavit new matter that would have been likely to change the opinion of the Supreme Court, as the same subject-matter was testified to by Hazeltine and Hogan, whose testimony as experts was before the Supreme Court.

The affidavit and argument were made in a proceeding where Armstrong was contending for an invention much broader than he or De Forest had ever made, and as to that contention, the affidavit and argument stated with reference to a receiver manufactured under the number D–17, that it was of the incidental type of feed back and not of the deliberate type. But the affidavit did not say that the feed back circuits of De Forest and Van Etten's August, 1912, work produced inherent oscillations, or that such oscillations were the result of the use of cascaded circuits employed in audions connected in series, and I have found that the "singing" or oscillations described in the De Forest August 6th and 29th records were deliberately produced by the feed back circuits described in the notebooks.

The evidence does not sustain defendant's contention that plaintiffs rely upon observations by De Forest of a "singing" telephone repeater or a multistage amplifier as a completion of his inventions.

The audion operates in the same way at audio as well as radio frequencies. De Forest's reduction to practice was on August 6, 1912, and not on April 17, 1913.

The demonstration of April 17, 1913, and De Forest's observations, tests, and experiments thereafter resulting in the De Forest and Logwood ultra-audion circuit and patent, do not establish that he did not have, and

knew he did not have, the high frequency feed back invention until after he learned of Armstrong's results, and in February, 1914, on the discovery of the ultra-audion receiving circuit by him and Logwood, nor did the conduct of De Forest subsequent to August 6, 1912, constitute an abandonment of the invention made by him on that day. These contentions were urged in the Third Circuit cases and on the evidence properly overruled. The Armstrong circuit was not disclosed prior to April 30, 1914, but was kept secret, and there is nothing in the evidence to justify a finding that De Forest knew of Armstrong's circuit before that date. The De Forest and Logwood application, and the application for patent No. 1,507,017 in suit, were filed on March 8 and 20, 1914; respectively, and prior to April 30, 1914, De Forest's own company had manufactured the ultra-audion oscillating radio receiving set.

There is no new matter presented as to the April 17, 1913, demonstration, as the offering in evidence of the reconstructed cabinet is not such new evidence as would be likely to change the opinion of the Supreme Court, in view of the testimony of the witness Fuller and the photographs of cabinets of similar type which were produced by him, which were before that court.

About April 16, 1914, a letter from the De Forest Company, stating that it was sending to the Bureau of Standards an audion amplifier and an audion detector for the exhibit of the American Physical Society, on April 24 and 25, 1914, was received by the Navy Department.

On April 24, 1914, before De Forest or the Navy Department had learned of Armstrong's feed back circuit, and, for the first time, the Navy had seen such a device operating, an exhibit was made by De Forest, who instructed Navy officials how to operate it at the Bureau of Standards, of the ultra-audion circuit with its oscillating audion, which was set up and actually received continuous wave signals. Within a month after June 9, 1914, the Navy secured from the De Forest Company and put into use several practical, operative oscillating ultra-audion detector sets, which were provided with the ultra-audion connection and means for varying the frequency of the oscillations and pitch of the note.

The contention of the defendant that De Forest did not make the invention prior to April 17, 1913, for the reason that it is impossible to produce the result with the apparatus De Forest is said to have used on

that demonstration, seems to me to be without force. Anybody can make apparatus that will not work, and the evidence does not satisfy me that the apparatus produced was the apparatus De Forest used. Neither the device nor the coils used by De Forest were produced. The Federal Company used several types of cabinets and coils, and it is not to be expected that either De Forest or Van Etten, after the lapse of twenty years, could definitely say whether the cabinet, Exhibit 2, and its apparatus reconstructed by Armstrong was or was not the apparatus, or similar apparatus, with which De Forest made his demonstration of April 17, 1913, and there would have been no purpose in asking either of them such questions.

The testimony of Elwell added nothing new to Fuller's testimony in prior cases, except with reference to the measurement he claimed to have made of the inductance coils, and that, based as it is in part upon notes made some time after the event, and in part on recollection, did not convince me that coils made according to his specifications were the same as the coils used by De Forest.

The cross-examination of Mr. Beale in this case added nothing to the attempted identification of the cabinet offered in evidence in this case, for at most he only identified it as similar in appearance to one of the various types employed by the Federal Telegraph Company, and said there was no single standard type of apparatus employed by the company.

That De Forest did not disclose the circuit arrangement of the April 17, 1913, demonstration, to me has no significance because Armstrong did not disclose his circuit, and his witnesses only heard signals; but the testimony of Beale that he heard, on the De Forest April 17, 1913, demonstration, a distinct heterodyne beat note, is important.

It is true and admitted by plaintiffs that the heterodyne note could be produced by gas action with the straight audion hookup, but the evidence on the trial before Judge Mayer does not appear to me to sustain defendant's contention that De Forest admitted that the language of the notebook entry of April 17th was amply descriptive of the straight audion hookup.

Defendant's criticism of the De Forest 1914 notebook entries in connection with his testimony, as showing that he did not have the invention in August, 1912, is the same, and on the same evidence, as was presented in the Third Circuit cases and before the Supreme Court.

The conclusions of counsel for the defendant I believe to be erroneous. Instead of the entries showing lack of knowledge of how to get feed back oscillations, they show attempts to develop the trigger action reception, a highly refined development phase of feed back oscillation, requiring an understanding of all of its phases, in which, instead of employing a feed back circuit, adjusted so that oscillations or alternating currents are continuously generated, the system was adjusted to a point just below continuous oscillation, so that the incoming signal would throw the system into its oscillatory condition, and when the transmitted signal ceased, the tube would restore itself to its nonoscillating condition.

In this De Forest did not fail, but when he ultimately succeeded, he found that although it would work, it did not have the expected commercial possibilities, because it was all too critical for use.

During the period in question De Forest was not only investigating and experimenting along this line, but trying to get out other circuits.

Defendant's contention that De Forest did not discover the feed back circuit until 1914 is completely refuted by the Logwood notebook entry of October 1, 1913, the day he first reported for work with the De Forest Company, the entry in which disclosed the feed back circuit of August 6, 1912, and is further refuted by the entries of October 3d, 4th, and 6th.

Defendant's argument based on De Forest's alleged lack of understanding of the working of the audion requires no extended consideration and seems to me to be without force, because it is immaterial whether the invention which the courts of the Third Circuit and the Supreme Court have held he made on August 6, 1912, was the result of exact knowledge, or accident, as De Forest knew what he had done and could reproduce it, and that was all that the law required.

The contention of the defendant that De Forest had not made the invention in August, 1912, based on the conduct of De Forest in Palo Alto in 1912 and 1913, was before the courts of the Third Circuit and the Supreme Court, and it was not strengthened by the testimony of Elwell in this case.

Certainly I am not convinced that the Federal Company's difficulty with static would have been remedied by the invention of De Forest; with the radio art much fur-

ther advanced than in 1912, still we have static.

I do not think that Elwell's testimony is entitled to the broad interpretation urged by defendant, as all that he said was that when De Forest developed the amplifier, the Federal Company tried it in their business; nor do I find anything in the evidence to warrant a finding that De Forest recognized the right of the Federal Company to use his invention in their radio work, and they recognized his right to his invention in the nonradio field.

I see nothing new in the argument based on the Federal contract of September 16, 1912, which is the same as was advanced in the Philadelphia case and before the Supreme Court, nor does it appear to me to be improbable that De Forest had the invention, because he did not disclose it to the Federal Company, as was likewise argued in the Philadelphia case. The evidence does not show that the Federal Company was the best market for the invention; in fact, without considering any others, the Navy was a better market, in that it actually purchased ultra-audion sets.

The same arguments based on the abandoned De Forest application, Serial No. 718,-612, filed September, 1912, and the same evidence in connection therewith, were before the court in the Philadelphia case and the Supreme Court.

The contention of the defendant that the conduct of De Forest and his associates in the spring of 1913 is utterly inconsistent with his having the invention, was advanced in the Supreme Court and requires no extended consideration, and the same is true with reference to the contract of De Forest with the Federal Company.

On the contrary, De Forest in his sale of a license under his audion patents for wired telephone purposes, in August, 1913, availed himself of the most immediate source of revenue, and used the money received to incorporate the present plaintiff De Forest Radio Company, and bring his assistant Logwood to New York and take up his experiments with the feed back circuit where he left off in California.

I do not agree with the defendant's contention that a finding that De Forest made his discovery before February, 1914, would have to rest only on oral testimony, nor that the plaintiff's oral testimony was self-contradictory in the extreme. Of course, there were some inconsistencies, but none on material or vital subjects were called to my attention. With the lapse of time and the natural failing of recollection, if the witnesses were truthful, there would naturally be inconsistencies.

The testimony in question was before the courts of the Third Circuit, and most if not all of it referred to in the brief in the Supreme Court.

Generally it is true on simple questions of fact, provided the witness has all the facts and data at the time of his examination, that the testimony on the first examination is the most reliable; but that does not follow without exception in a case of the character of the instant suit, where the first examination was in the interference proceeding six years after the event, and the witness De Forest had not lately seen the Van Etten notebook before testifying, and where later examinations, especially the cross-examinations, were conducted after the witness was possessed of all the facts and data and was more searching, giving the witness the opportunity to give more enlightened testimony.

The cross-examination of De Forest on this trial, confined as it was to parts of the testimony in other cases, did not differ in any material and substantial respect from his testimony in all the other cases, and therefore was not in any sense new evidence that was not before the Supreme Court.

The defendant attacks the testimony of Dr. Stone with reference to the disclosure made to him by De Forest in October, 1912, but the evidence except as to the time he was employed by the telephone company, and a very few other unimportant exceptions, and the argument based thereon, is the same as that advanced in the Supreme Court, in the briefs on behalf of Armstrong.

Under such circumstances I might properly content myself with discussing only the question of his employment by the telephone company, but I do not believe that his evidence in the cases in the Third Circuit justified the statement that it was false, nor in the instant suit the inference that it is not true.

The argument that Stone, when he stated that De Forest explained to him in October, 1912, the relation of inductance in the circuit to the pitch of the audible note, must have been testifying falsely because De Forest, at that time, believed that "pitch of the note was independent of the electrical constants of the circuit," is without foundation because the circuits of the August 6th and August 29th entries were feed back circuits

where the pitch of the note was determined by the inductance and capacity of the circuit.

The above-quoted belief of De Forest related to a different experiment employing an entirely different circuit arrangement in which, as has hereinbefore been pointed out, the whistling phenomena encountered was produced by some cause other than his feed back circuit of August 6th or August 29th.

The suggestion that Dr. Stone's testimony was responsive to a yearly retainer made by the telephone company is not supported by the evidence, and the contention that because Stone said nothing about a disclosure of radio frequency in the interference case, there is some question as to whether such disclosure was made, seems to me not to be sustained, because he drew and referred to the same sketch in the interference and New York case which is in evidence in this case, and shows inductance coils of radio frequency dimensions, angularly placed with respect to each other, an exclusive radio feature.

As has been hereinbefore said, the Meissner circuit is not identical with the circuit shown by De Forest to Dr. Stone, and the fact that De Forest could not make it work is not to me evidence that he had not made the invention of the feed back circuit on August 6, 1912.

The argument and evidence on which the defendant relies to show that the ultra-audion applications show that De Forest did not discover feed back until February, 1914, that he had received new light from Armstrong's paper, and that he had a well-considered plan to draw to himself a monopoly of Armstrong's invention, was before the Supreme Court on the same evidence as was offered in the instant suit.

Original Fig. 1 of the ultra-audion application was not, as contended by defendant, the trigger effect audio frequency circuit referred to as the new and simplified circuit of De Forest's notebook entry of February 17, 1914, but was the inductively coupled feed back circuit which became Fig. 1 of the patent in suit, No. 1,507,016.

What De Forest said on the trial of the instant suit was that Fig 1 was the same as the new and simplified circuit of February 17, 1914, except that in one case there is a direct coupling, and in the other an indirect coupling, through an intermediate circuit.

It seems to me that if comparison was made to-day between different vacuum tube circuits, it would be hard to give a better answer, as the similarity is so great and the differences so small that it would be necessary to admit that they were the same, except as to specified changes.

The reference to high frequency in the grid circuit, and no mention of high frequency in the plate circuit in the ultra-audion application, does not seem to be important, as what the Supreme Court sustained was the broad invention of the feed back circuit itself, and the oscillating audion, at any frequency. The ultra-audion application included the inductive feed back circuit of August 6, 1912, applied to radio.

The argument that the failure to recognize that Fig. 2 of the original ultra-audion application was the ultra-audion regenerative feed back circuit, and the filing of the application without including any of the circuits of the 1912 notes, negatives the idea that De Forest had invented the feed back circuit of the 1912 notes, seems to me to be based on error. Fig. 2 of the original ultra-audion application is the ultra-audion regenerative feed back circuit, but original Fig. 1 of that application is the inductively coupled feed back circuit of August 6, 1912.

The contention of the defendant that De Forest, in his original application for patent No. 1,507,017, attributed the oscillation to gas action, does not seem to me to be strictly correct; on the contrary, as I understand it, he simply indicates that it was thought that gas played a part in setting up the oscillations. The tubes of that day were of the soft or gassy variety, not the tubes of the present day.

The contention of the defendant that De Forest avoided an interference is based upon evidence and arguments the same as were presented to the Supreme Court and requires no further consideration.

The contention of the defendant that the ultra-audion circuit could not be the basis of two patents both claiming the circuit, as such, seems to have no place in the argument. The ultra-audion circuit is not itself the joint invention of De Forest and Logwood. The specific use of that specific circuit for heterodyne reception is the joint invention of De Forest and Logwood. The claims of patent No. 1,507,017 on which this suit is based are not for the same invention as the claims of the ultra-audion patent.

Defendant's criticism of what De Forest did when he discovered that the joint application of De Forest and Logwood inadvertently included therein subject-matter which was his sole invention seems to be without point,

as he apparently took what defendant thought was the proper course, that is, promptly cancel the figure of the drawings inadvertently included, and limit all of the claims of the De Forest and Logwood application to the real joint invention, and file a new application making the inductively coupled feed back circuit the basis which became patent No. 1,507,016.

The defendant's contention as to the falsity of the affidavit filed by De Forest on the ultra-audion application, that he had invented it prior to 1913, does not appear to be sustained. While it is true that Fig. 4 of that application was not invented until February 17, 1914, and was not identical in every respect with the 1912 circuits, the novel features of the broader invention of 1912 were present.

The defendant's contention that De Forest derived new light from Armstrong's Radio Institute Paper was before the Supreme Court on the same argument and the same evidence.

It is therefore sufficient to state that the paper in question was delivered March 3, 1915, and published in 1915. De Forest was not present when the paper was delivered but had an advance copy, but there is no showing when he received the copy, and certainly there is nothing to show that he received such copy a year before its delivery, when he had his ultra-audion detector on public exhibition and on the market a year before the paper was delivered.

With reference to the contentions of the defendant as to the filing of De Forest's application, September 23, 1915, patent No. 1,507,016, it seems to me that this was before the Supreme Court; but in any event I do not find evidence which sustains the defendant's contention.

Fig. 1 of patent No. 1,507,016 shows the inductively coupled input and output circuits of the audion. The August 6, 1912, entry discloses the grid filament of the audion inductively coupled to the plate filament circuit thereof through the medium of coils, one of which is included in each of said circuits.

The argument as to the statement that, in that patent, pitch of the note depends on the inductance and capacity of the circuit, and the argument with reference to the practice in the Patent Office to give a claim which is a count of an interference the broadest possible interpretation, were both before the Supreme Court and require no further consideration.

While the defendant's contention as to the De Forest affidavit which supported the September 23, 1915, application is phrased somewhat differently, it is the same that was urged on the Circuit Court of Appeals of the Third Circuit, and therefore in the Supreme Court, and needs no further consideration. De Forest employed the circuit arrangement of his own notebook in establishing his date of invention, and not the Van Etten circuit, as he did not, until after that time, have possession of the Van Etten notebook.

The defendant's contention that De Forest framed the interference issues to fit his plans, and the supporting arguments, were presented to the Supreme Court.

It seems to me that the 1912 notebook entries were coupled to the radio field by the cross-examination of De Forest and Van Etten before any testimony coupling the notes to the radio field was given by Logwood, Myers, or Stone, and this testimony was not discredited by the mistaken testimony of Logwood and De Forest as to the date of the reception by them of Elwell's signals.

The contention of the defendant that Van Etten's testimony, taken by deposition in the absence of counsel for Armstrong, was distorted by leading questions, does not seem to be sustained; but in any event Van Etten was subjected to a searching cross-examination by opposing counsel, and did refer to the radio tests De Forest was making with Van Etten's assistance in 1912.

In addition, Mr. Van Etten testified at the trial in the Philadelphia case, and again was subjected to a searching cross-examination.

De Forest in his testimony in the interference case said, of the discovery of 1912, that he found that the pitch of the note varied with changes of capacity and inductance of the condensers and coils in the circuit, and could be changed through a great range of frequency.

Reading the testimony of De Forest in that case, it seems to me that while the demonstration in August, 1912, was of the generation of alternating currents of a range of frequency lying within the audible limit, and of relatively small power, that De Forest disclosed the application of the oscillating audion as a producer of alternating currents which could be utilized wherever and in whatever field alternating currents could be of use. As has been hereinbefore noted, the contract with the Federal Telegraph Company was before the Supreme Court and requires no further consideration.

Defendant's contention that De Forest on his cross-examination in the interference proceeding, when confronted with the situation that if the application of the audion to radio reception was first made in April, 1913, it would come under the terms of the contract and belong to the Federal Company, for the first time suggested that the use of the audion for radio reception was inherent in the audio frequency work of August, 1912, is not sustained, as De Forest had previously testified that the August, 1912, demonstration was applicable to radio work, and De Forest sought to develop it as a detector of great sensitiveness.

The contention by defendant that on the trial before Judge Mayer it was asserted that the "singing" phenomena was accidentally discovered, and that De Forest recognized at once that he had there a generator of alternating currents, does not appear to be sustained by the testimony as I read it.

The contention of the defendant that it was planned by De Forest to include in the interference the proof that prior to 1912, it was known that the audion would behave in the same way at high frequencies and at low frequencies, but that such evidence was excluded by Judge Mayer, was made before the Supreme Court, and needs no further consideration; but it must not be lost sight of that the Armstrong Article of March 13, 1915, and the testimony of Armstrong in the New York case, established that the audion operated the same, both at low and at high frequencies.

The defendant's argument that the proof offered in the interference to show that De Forest had the invention before he knew anything about Armstrong's work was discredited by the testimony of Logwood, Myers, and De Forest, with reference to the receipt of signals sent by Elwell from a station in England, and received at Myers' station on West End avenue, New York, was fully presented to the Supreme Court, and has been previously considered herein.

The argument advanced by the defendant here with reference to the decision in the Court of Appeals of the District of Columbia is the same which was advanced in the Supreme Court, that decision having been thoroughly reviewed in the cases which were presented to the Supreme Court, and need not be considered further.

It is likewise true that the same argument was made in the Supreme Court on the point now urged by defendant, that the vital question, whether the oscillations due to inherent feed back in a telephone repeater or amplifier circuit was the invention, or any invention, could not be avoided in the case in the Second Circuit, and need not be enlarged upon here.

I do not agree with defendant's contention that when it came to litigation in the Third Circuit, De Forest's counsel took the final step forward and claimed that De Forest was entitled to August, 1912, date, not only for the audible frequency oscillating generator but for the very invention patented in Armstrong's patent.

It appears to me that the position of counsel for De Forest in the Third Circuit litigation, and counsel for plaintiff here, is that De Forest claimed that feed back circuit itself and the feed back oscillator, and that there was no invention in generating currents of one frequency as distinguished from another. The invention was to produce alternating currents irrespective of frequency. After the generator of electrical oscillations was once produced, any engineer would know how to vary the frequency of the oscillations.

What plaintiffs contend is that De Forest invented the feed back circuit, adjusted to produce oscillations for a useful purpose on August 6, 1912. There is no evidence to show that De Forest then knew of the utility of the feed back circuit, adjusted below its oscillation point.

Armstrong produced a feed back circuit, adjusted below its oscillation point, and there is no evidence to show that he then knew of any useful purpose for the feed back circuit, adjusted to its oscillating stage.

The feed back circuit being common to both productions, the question of priority of invention of that which was common raised an issue.

Due to the insistence of Armstrong on a broad construction of his claims to cover any and all feed back circuits of any kind or nature whatsoever, the Armstrong and De Forest patents became interfering in fact, as was held by Judge Thompson, in Philadelphia, affirmed by the Court of Appeals for the Third Circuit, and not found to be error by the Supreme Court.

There seems to be nothing new in the defendant's argument that the Court of Appeals for the Third Circuit failed to cut through the mysteries of the subject and to find as a matter of fact that the invention was disclosed in the August, 1912, notebook, although the court defined the invention as an improvement in radio signaling systems,

which is certainly not there disclosed as that argument was made before the Supreme Court.

As I understand the plaintiffs' position, to which reference has been heretofore made, it is that De Forest early thought of the use of an audion generator in radio by beat note reception, and prior to August 6, 1912, had been experimenting to accomplish that result; but they do not contend that that thought and those experiments avoided the prior art of the "singing" telephone repeater. That De Forest knew and had been familiar since 1910 with the difference between the true beat phenomenon and freak effects with the audion. That they do not concede that the August 6, 1912, reduction to practice was within any prior art that had to be avoided. On the contrary, they contend that there is no question of the patentable novelty of the August 6th demonstration, and that no one had used the audion as a generator of alternating currents, high or low frequency, before that demonstration, and that such question was disposed of by the decision of the Third Circuit, affirmed by the Supreme Court.

They further contend that nothing is set up before this court which is an anticipation of the invention. With that contention I agree, as the patents and publications first offered on this trial present nothing new or that was not contended to have been shown by the patents and publications which were in evidence in the cases in the Third Circuit or before the Supreme Court.

I cannot agree with defendant's contention that plaintiffs are not consistent, as it seems to me that De Forest claimed, and the Supreme Court decided, and what he claimed here is that the August 6th circuit is his invention; that it is a feed back circuit producing the audible oscillations; that changing frequencies by tuning was well known in the prior art; that De Forest disclosed this in his audion patent applied for January 29, 1907; that the audion operated the same at high frequency as it did at low frequency; and that there was no invention in changing coils to make the circuit generate higher or radio frequency oscillations.

The question of Armstrong's reconstructed Federal cabinet has been fully discussed, but it may, even if it be considered repetition, be well to call attention to the fact that the coil referred to in Van Etten's notebook, said to be almost precisely the same in dimension as the Elwell coil, is not the coil used in the April 17, 1913, demonstration, but was a coil used in the San Francisco station in May, 1912. The evidence does not show that De Forest used similar coils in that demonstration.

I do not agree with the defendant's contention that coils placed at right angles to each other are most favorable to the production of oscillations; on the contrary, as I understand it, coils so placed afford a weak coupling.

What De Forest said was that in the demonstration of April 17, 1913, he was using a standard receiving cabinet, ordinarily used in the station of the Federal Company. He did not give the dimensions of the coils used, nor did he say whether they were similar to those used in the San Francisco station in May, 1912.

Van Etten testified that in 1912 there may have been as many as a dozen coils made up for different purposes, for experiments at different times.

I do not believe that any one can certainly say what the dimensions of the coils were that were actually used in the April, 1913, demonstration.

The second defense, called by the defendant in its argument the defense of anticipation of De Forest patent No. 1,507,017 by the De Forest-Logwood patent, No. 1,170,881, seems by that argument to be presented in three ways: First, joint invention; second, double patenting; and, third, anticipation.

No defense of joint patenting by De Forest and Logwood is set up in the answer, and none is sustained by the evidence.

The circuits of August 6 and 29, 1912, which were held to be the invention of De Forest and produced alternating currents or oscillations, were of the inductively coupled type.

De Forest and Logwood, in October or the fall of 1913, produced oscillations by a different type of feed back circuit, with particular application to a radio receiver called the ultra-audion circuit, through which the detection of continuous waves, by the beat method, was accomplished.

As hereinbefore pointed out, the De Forest and Logwood application, as filed March 12, 1914, disclosed the production of oscillations by the inductive feed back as well as by the specific feed back circuit of the ultra-audion, and as soon as this was discovered, the subject-matter of the production of oscillations by the inductively coupled type of feed back of August 6, 1912, was canceled and became the subject-matter of the application

for patent No. 1,507,016, filed September 23, 1915; the broad claims 24, 25, 26, 27, and 28 thereof being here relied upon, claims 25, 26, and 28 being counts 1, 2, and 3, respectively, of the four-party interference.

De Forest, on March 20, 1914, filed his application for patent No. 1,507,017, illustrating one of the ultra-audion circuits; but claims 15, 17, 18, 19, 20, and 21 upon which this suit is based are directed to the feed back circuit broadly and generally, irrespective of particular circuit or couplings, claims 15 and 16 being counts 6 and 9, respectively, of the three-party interference.

The claims of the joint patent of De Forest and of Logwood, No. 1,170,881, cover specific circuits or connections for specific purposes, and in none of its claims is there claimed the inventions of the claims of the patents in suit upon which this suit is based.

There is no identity of subject-matter of any of the claims of patent No. 1,507,017 with any of the claims of the joint patent.

█ Logwood did not help or co-operate with De Forest in making the invention of August, 1912, and the making of the invention of the joint patent did not bar De Forest from patenting the basic feed back circuit conceived and reduced to practice by him in August, 1912, as to which there was no joint invention.

█ As to double patenting, the doctrine is that if two patents are granted for the same invention, the latter is void, and the test of such identity is whether or not the claims of two patents, interpreted in the light of the specifications, are coextensive or cover or control the same subject-matter. Thomson-Houston Electric Co. v. Elmira & H. Ry. Co. (C. C. A.) 71 F. 396; Vapor Car Heat. Co. v. Gold Car Heat. & L. Co. (D. C.) 296 F. 188, 196.

The defendant's contention, "That the disclosure of a single instrumentality cannot validly be the basis of two patents is elementary. It is the foundation of the doctrine of double patenting," is misleading and erroneous and it is not sustained by the following cases cited by it.

In Miller v. Eagle Mfg. Co., 151 U. S. 186, 198, 14 S. Ct. 310, 38 L. Ed. 121, the court held that the two patents in question to the same patentee were in fact for the same invention, and that the latter was void.

In Thomson-Houston Electric Co. v. Hoosick Ry. Co. (C. C. A.) 82 F. 461, affirmed Thomson-Houston Electric Co. v. Union Ry. Co. (C. C. A.) 86 F. 636, the court held

that the later of two patents, issued to the same inventor, was for the same invention covered by the earlier patent, and cites as authority Thomson-Houston Electric Co. v. Elmira & H. Ry. Co., supra.

Dwight & Lloyd Sintering Co. v. Greenawalt (C. C. A.) 27 F.(2d) 823, holds that a disclosure of a joint invention of two patentees, in an earlier application of patent, is a good anticipation of the later invention of either patentee, but is not in point.

As to anticipation:

The application which resulted in patent No. 1,507,017 was filed March 20, 1914, and disclosed the generic feed back claimed in the claims on which this suit is based.

This was an invention made by De Forest alone in which Logwood had no part.

The application which resulted in patent No. 1,170,881 was filed March 12, 1914, and disclosed an invention made later by De Forest and Logwood, of a specific feed back circuit of the ultra-audion type.

The application for the joint patent was then filed eight days before the filing of the application by De Forest which resulted in patent No. 1,507,017.

The two applications were copending applications in the Patent Office, and the disclosures of the earlier application do not anticipate claims made in the later applications.

█ The filing of the later application and claiming therein one of the inventions disclosed, but not claimed, in the earlier patent, negatives all intention of abandonment or dedication thereof to the public which would be otherwise inferred from such a disclosure. Suffolk v. Hayden, 3 Wall. 315, 18 L. Ed. 76; Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 450, 36 L. Ed. 154; Kinnear Mfg. Co. v. Wilson (C. C. A.) 142 F. 970, 973; Thomson-Houston Electric Co. v. Elmira & H. Ry. Co., supra, certiorari denied, 163 U. S. 685, 16 S. Ct. 1201, 41 L. Ed. 315; Victor Talking Machine Co. v. American Graph. Co. (C. C.) 140 F. 860.

█ The De Forest-Logwood patent, No. 1,170,881 does not anticipate the De Forest patent, No. 1,507,017.

█ From my examination of all of the evidence, I am of the opinion that there has not been introduced on the trial of this suit materially new evidence which if it had been before the Supreme Court would have changed the decision of that court; and in addition to that, there has not been introduced on the trial of this suit materially new evidence

of knowledge or invention by another prior to the invention of De Forest, and the evidence offered does not materially differ from that in the case decided by the Supreme Court, and the plaintiffs are entitled to a decree as prayed for in the bill of complaint, with costs and the usual order of reference.

A decree may be entered in favor of the plaintiffs against the defendant for damages, injunction, and costs as prayed for in the bill of complaint, with the usual order of reference.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion for the assistance of the court, as provided by the rules of this court.