## DUN *v.* LUMBERMEN'S CREDIT ASSOCIATION.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 138.   Argued January 31, 1908.—Decided February 24, 1908.

Findings of fact in a suit in equity made by both the Circuit Court and the Circuit Court of Appeals will not be reversed by this court unless shown to be clearly erroneous.

Where the lower courts have both found that the proportion of copyrighted matter issued in a later publication, in this case a trade rating journal, is insignificant compared with the volume of independently acquired information, an injunction should be refused and the owner of the copyright remitted to a court of law to recover the damages actually sustained. 144 Fed. Rep. 83, affirmed.

THE facts are stated in the opinion.

*Mr. John O'Connor* and *Mr. Charles K. Offield,* with whom *Mr. Thomas M. Hoyne* and *Mr. Henry S. Towle* were on the brief, for appellants.

*Mr. Fred H. Atwood* and *Mr. Charles O. Loucks,* with whom *Mr. Frank B. Pease* was on the brief, for appellees.

MR. JUSTICE MOODY delivered the opinion of the court.

The appellants are the proprietors of a mercantile agency which publishes at intervals a copyrighted book of reference containing lists of merchants, manufacturers and traders in the United States and the North American British possessions. The book contains information as to the business, capital and credit rating of those who are enumerated in it. The information is obtained at large expense and is useful to those who are engaged in trade and commerce, who in large number subscribe to the privilege of consulting copies of it, which are furnished but not sold to them. The appellee is a corporation engaged in preparing and publishing a similar book, limited, however, to those engaged in the lumber and kindred trades. The book is called the Reference Book of the Lumbermen's Credit Association. The appellants brought in the Circuit Court of the United States a suit in equity, alleging an infringement of their copyright by the appellee, and praying for an injunction, for an account, and for general relief. After hearing evidence, the Circuit Court entered a decree dismissing the bill for want of equity, which, with an immaterial modification, was affirmed by the Circuit Court of Appeals. An appeal to this court was then taken..

Both the courts below made findings of fact, which are in substantial agreement. Those findings best appear by quotations from the opinions which follow. The judge of the Circuit Court said:

"From the evidence it appears that defendant admits using complainants' book, but insists that it did so merely for the purpose of comparison and for information as to names, but that in every case it, at great cost, procured original and independent information as to the rating and other facts contained in defendants' book. There are in respondents' reference book more than 60,000 names. The evidence shows that there are on hand more than 1,000,000 reports, replies to inquiries, etc. It further appears that defendants receive large

numbers of newspapers, magazines, trade journals and bulletins; that they use traveling men, lumber dealers, agents, lawyers, justices of the peace, mercantile associations, railroad companies and the clippings sent out by a number of clipping bureaus. At times defendants' mail reaches approximately 2,000 pieces of mail per day. A large force of employés and large offices are required in the management of the business.

"On the other hand, a number of instances are disclosed in the evidence which have strong tendency to establish the charge that defendants have used some of complainants' copyright material in making their book. The same mistakes occur in each. In one case complainants' witness swears to an entirely fictitious item placed in complainants' book as a test, which was duly appropriated by defendants. In regard to a number of items said to be duplicated, defendants show original investigation. Still, when all the explanations are considered, it seems to be fairly established that defendants did take some of the items complained of. Generally such *indicia* is held to indicate a substantial theft of copyright property, but taking all the evidence together I am satisfied that the items selected as tests constitute the bulk of all the items taken, and that they are of small moment in comparison with the whole.

"Defendants' book gives information on 113 subjects, complainants on 19. When we consider that the matter consists of names and other data, which, when true, must be the same in any report, and that in many cases the source of information must often be the same with both the parties thereto, it would seem to be just to lay down a different rule from that which obtains in cases where syllabi and summaries of law and fact are appropriated. Here seems to be no attempt to coin money out of another's labor. It is clearly a case in which the matter taken must be substantial and such as to really work injury to complainants.

"When we take note of the character of the items alleged to be appropriated on the one hand and the consequences of

granting the injunction prayed for, it would be an unwarrantable use of the power of the court to do so."

The Circuit Court of Appeals said:

"The question is one of fact, to be solved by a study of the evidence. From our examination we concur in the conclusion of the Circuit Court. The large features are that appellees' book of about 60,000 names contain over 16,000 (and over 400 towns) that are not in Dun's; that of the names in common only about fifteen per cent have similar capital ratings, that of the names with similar capital ratings a large proportion are classified differently respecting the particular businesses; and that six times as many different classes of information are given in appellees' book as in Dun's. On every page of appellees' book the names that are not given in Dun's and the names regarding which the information does not exceed or substantially vary from that given in Dun's bear the relation of three to one. These features are ocular confirmation of appellees' testimony regarding the long-continued, elaborate and comprehensive system of obtaining independent information. It is futile to claim that such a system, producing twenty-five per cent more names than Dun, and six times as many subjects of information concerning the persons named, is kept up at great expense merely as a cloak. It may be that the evidence would require a finding that with respect to a few names an improper use of Dun's book was made by an agent or correspondent of appellees. But the proportion is so insignificant compared with the injury from stopping appellees' use of their enormous volume of independently acquired information, that an injunction would be unconscionable. In such cases the copyright owner should be remitted to his remedy at law. Drone on Copyright, 413; *Mead* v. *West Pub. Co.*, 80 Fed. Rep. 380."

We cannot, as we are asked to do by the appellants, reverse the findings of fact made by the Circuit Court and the Circuit Court of Appeals. Successively considering the same evidence, the two courts agree in the findings. In such a case in a suit

in equity the findings will not be disturbed by this court, unless they are shown to be clearly erroneous. *Towson* v. *Moore*, 173 U. S. 17; *Brainard* v. *Buck*, 184 U. S. 99; *Shappirio* v. *Goldberg*, 192 U. S. 232. An examination of the voluminous testimony shows that it tended to sustain the findings, and that, to say the least, there is no ground for saying that the conclusions drawn from the evidence were clearly erroneous.

Accepting as true the facts found, we think the discretion of the court was wisely exercised in refusing an injunction and remitting the appellants to a court of law to recover such damage as they might there prove that they had sustained. The reasons for this conclusion are tersely stated in the opinion of the Court of Appeals, which we have quoted, and we approve them.

*Judgment affirmed.*