# CHARLESTON MINING COMPANY *v.* UNITED STATES.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 93. Argued January 10, 1927.—Decided February 21, 1927.

1. A finding of fraud in fact which is not clearly erroneous will not be disturbed when concurred in by two federal courts below. P. 223.
2. The Act of March 3, 1845, granting to the State of Florida " section numbered 16 in every township or other land equivalent thereto " for school purposes, was not self-executing in the indemnity provision, but left the grant dependent, in that regard, upon future action of Congress. P. 224.
3. Assuming that under the Act of 1845 there was an equitable obligation in fulfillment of the grant to provide for selection of mineral as well as non-mineral indemnity lands, yet the only actual provision (Rev. Stats. §§ 2275 and 2276, as amended February 28, 1891) limits selection to land not mineral in character; and consequently a certification of mineral land is unauthorized, and, when procured upon false representation that the land is non-mineral, is voidable at the suit of the United States. P. 225.

3 Fed. (2d) 1019, affirmed.

.APPEAL from a decree of the Circuit Court of Appeals, which affirmed a decree of the District Court (298 Fed., 127) setting aside, in part, a certification of indemnity school land, in a suit by the United States based on fraudulent representations.

Messrs. *Edwin C. Brandenburg* and *William Wade Hampton*, with whom *Messrs. Fred J. Hampton, E. B. Hampton*, and *Louis M. Denit* were on the brief, for the appellant.

*Solicitor General Mitchell*, with whom *Assistant Attorney General Parmenter* and *Messrs. E. O. Patterson, O. H. Graves*, and *Perry C. Michener* were on the brief, for the United States.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This was a bill in equity brought by the United States in the District Court for the Southern District of Florida, by direction of the Attorney General, against the Charleston, South Carolina, Mining and Manufacturing Company, to have declared void the approval and certification, by the Secretary of the Interior and the Commissioner of the General Land Office of 320 acres of the public lands of the United States in Polk County, Florida, to the State of Florida, title to which was transferred by mesne conveyances from the State of Florida to defendant Mining Company. The bill averred that the selection, approval and certification had been procured from the Government Land Officials upon fraudulent representations with reference to the non-mineral character of the land, the representations having been made in an affidavit at the instance of the defendant company and with its knowledge, for the purpose of securing such conveyance to the State and through the state authorities to the defendant.

. The prayer was that the title or conveyance be held for naught and be deliverd up and surrendered for cancellation, that the described lands be adjudged the property of the United States, that the defendants be enjoined from setting up any claim thereto or creating any cloud upon the title of the United States, and that the possession be restored to the United States. . An answer was filed by the defendant denying the averments of the bill; and there was a full hearing upon evidence. · The District Court held that the evidence of fraud was established in reference to 280 of the 320 acres described in the bill; and, as to that, the relief prayed for was granted; but the bill was dismissed as to ¨the remaining forty acres. 298 Fed. 127. On appeal of the defendant, the Circuit Court of Appeals of the Fifth Circuit affirmed the decree of the District Court. The case came to this Court on appeal taken on February 7, 1925, under § 241 of the Judicial Code, as a suit to which the United States was a party which was not made final by the other provisions of the Judiciary Title.

The evidence for the Government tended to show the following: In 1906, Singleton, acting for and in the employ of the appellant, prospected for phosphate deposits in the vicinity of these lands. He explored by making borings in a tract of 360 acres adjacent to the one in suit, which on his recommendation was purchased by the appellant for $40,000. The 280 acres here restored to the Government by the lower courts contained, according to borings and tests made in 1910, phosphates which ran from 61 to 66.84 per cent., and it appeared that at that time phosphate at 60 per cent. could be profitably mined. The land belonged to the United States. Singleton's plan was to secure the 320 acres in question as indemnity for school sections 16 conveyed by the United States to Florida under the Act of March 3, 1845, c. 75, 5 Stat. 788. Singleton arranged with one Stewart to induce the state

land agent, Hampton, to make the selection. Stewart in turn procured one Hollingsworth to make an affidavit that the land was non-mineral. Hollingsworth made a superficial inspection of the lands in company with Singleton, but obtained no information sufficient to disclose whether the lands contained phosphates or not. Singleton knew that Hollingsworth was to make the affidavit without any real knowledge as to the character of the lands, which, so far as Singleton and defendant were concerned, made the affidavit false. With this affidavit, and at the instance of the defendant's agent, Hampton innocently applied to the United States to make the selection and cause the lands to be certified to the State as indemnity lands selected under statute.

There was a conflict of evidence, but the District Court found the facts as above, and that the defendant was guilty of fraud in procuring a false affidavit upon which the selection and certification of the lands was secured. The Circuit Court of Appeals sustained the finding of the lower court.

The rule is well established that this Court will not disturb a finding of fact made by a District Court, in equity, concurred in by the Circuit Court of Appeals, except in case of the clearest error. *United States v. State Investment Company,* 264 U. S. 206, 211; *Brewer Oil Company v. United States,* 260 U. S. 77, 86; *Bodkin v. Edwards,* 255 U. S. 221, 233; *National Bank of Athens v. Shackelford,* 239 U. S. 81, 82; *Wright-Blodgett Company v. United States,* 236 U. S. 397, 402; *Washington Securities Company v. United States,* 234 U. S. 76, 78; *Texas & Pacific Company v. Louisiana Railroad Commission,* 232 U. S. 338, 339; *Chicago Junction Railway Company v. King,* 222 U. S. 222, 224; *Page v. Rogers,* 211 U. S. 575, 577; *Dun v. Lumbermen's Credit Association,* 209 U. S. 20, 24.

We therefore are limited in this cause to the question of law which is raised,—whether the indemnity selection

here made was valid even if it was for known mineral land. The grant of March 3, 1845, to Florida, read as follows:

" That in consideration of the concessions made by the State, of Florida in respect to the public lands, there be granted to the said state eight entire sections of land for the purpose of fixing their seat of government; also section numbered 16 in every township or other land equivalent thereto for the use of the inhabitants of such township for the support of public schools . . ."

It is said that this constitutes a binding compact between the State and the United States, which can not be abrogated, and that the State was entitled to every section 16, whether mineral or agricultural, and that, in case of loss, the State had the specific right to select from vacant lands of the United States in that State other lands, without reference to the character of the lands so selected, whether mineral or otherwise.

The District Judge expressed himself as impressed with this argument, but said that he was bound by the decision of this Court in *United States* v. *Sweet*, 245 U. S. 563, in which this Court held that under § 6 of the Utah enabling act of July 16, 1894, 28 Stat. 107, a grant of section 16, in place, for school purposes, in view of the settled policy of Congress to dispose of mineral lands only under laws specially including them, was not intended to embrace lands known to be valuable for coal. It is urged that the District Judge erred in applying the *Sweet* case to the case here, because the decision of this Court in *Work* v. *Louisiana*, 269 U. S. 250, shows that the *Sweet* case did not apply to a construction of the Swamp Land grants made in 1849 and 1850, and that if the Act enacted then contained no exception or reservation of mineral land, none was to be implied, since the policy of withholding mineral lands from disposition, except under law specially including them, was not then established.

It is to be observed that the case of *Work* v. *Louisiana* applied to a grant of swamp lands, and did not refer to indemnity lands thereafter to be selected. The phrase in the original grant of 1845, in this case, " or other lands equivalent thereto," was not self-executing. It could not and did not confer on the beneficiary of the grant the right to make indemnity selections, except as Congress should provide for the exercise of that right.

The only authority conferred by Congress for selection and certification of indemnity lands for a failure of the grant of a school section No. 16, applicable to the Act of 1845, is found in § 2275 of the Revised Statutes, as amended by the Act of February 28, 1891, c. 384, 26 Stat. 796, and § 2276 of the Revised Statutes, as amended by the same Act. These sections are as follows:

" Sec. 2275. Where settlements with a view to preemption or homestead have been, or shall hereafter be made, before the survey of the lands in the field, which are found to have been made on sections sixteen to thirty-six, those sections shall be subject to the claims of such settlers; and if such sections, or either of them, have been or shall be granted, reserved or pledged for the use of schools or colleges in the State or Territory in which they lie, other lands of equal acreage are hereby appropriated and granted, and may be selected by said State or Territory, in lieu of such as may be thus taken by pre-emption or homestead settlers. And other lands of equal acreage are also hereby appropriated and granted, and may be selected by said State or Territory where sections sixteen or thirty-six are mineral land, or are included within any Indian, military, or other reservation, or are otherwise disposed of by the United States, Provided, Where any State is entitled to said sections sixteen and thirty-six, or where said sections are reserved to any Territory, notwithstanding the same may be mineral land or embraced

within a military, Indian, or other reservation, the selection of such lands in lieu thereof by said State or Territory shall be a waiver of its right to said sections. And other lands of equal acreage are also hereby appropriated and granted, and may be selected by said State or Territory to compensate deficiencies for school purposes, where sections sixteen or thirty-six are fractional in quantity, or where one or both are wanting by reason of the township being fractional, or from any natural cause whatever.

" Section 2276. That the lands appropriated by the preceding section shall be selected from any unappropriated surveyed public lands, not mineral in character, within the State or Territory where such losses or deficiencies of school sections occur; and where the selections are to compensate for deficiencies of school lands in fractional townships, such selections shall be made in accordance with the following principles of adjustment, to wit: For each township, or fractional township, containing a greater quantity of land than three-quarters of an entire township, one section; for a fractional township, containing a greater quantity of land than one-half, and not more than three-quarters of a township, three-quarters of a section; for a fractional township, containing a greater quantity of land than one-quarter and not more than one-half of a township, one-half section; and for a fractional township containing a greater quantity of land than one entire section, and not more than one-quarter of a township, one-quarter section of land; Provided, That the States or Territories which are, or shall be entitled to both the sixteenth and thirty-sixth sections in place, shall have the right to select double the amounts named, to compensate for deficiencies for school land in fractional townships."

The lands here in question were selected by the State by lists filed on February 12 and February 19, 1906, pursuant to these sections, and the selections were supported by an affidavit that the lands were not mineral in char-

acter.   They were approved December 11, 1907, and were
certified to the State December 18, 1907, and were there-
upon conveyed by the State to one who took title for the
appellant, who had procured the selection and the certifi-
cation.   These sections require that the indemnity lands
to be conveyed thereunder shall not be mineral in char-
acter.   Only Congress can convey title to the land of the
United States, and it makes no difference what was its
equitable obligation to convey title under the original
grant of 1845 in respect of indemnity lands.   Congress
certainly intended to convey as indemnity lands only
those described in the Act of 1891.   There was no power
in anyone representing the United States, therefore, to
convey indemnity land which was mineral in character;
and any scheme by which conveyance of such land was
obtained was a fraud upon the United States.

The decree of the Circuit Court of Appeals is

*Affirmed.*