09-2878-cv
Salinger v. Colting

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2009

(Argued:    September 3, 2009                    Decided:    April 30, 2010)

Docket No. 09-2878-cv

───────────────────────────

COLLEEN M. SALINGER and MATTHEW R. SALINGER, as Trustees of the J.D. Salinger Literary Trust,

*Plaintiffs-Appellees*,

– v. –

FREDRIK COLTING, writing under the name John David California, WINDUPBIRD PUBLISHING LTD., NICOTEXT A.B., and ABP, INC., doing business as SCB DISTRIBUTORS, INC,

*Defendants-Appellants.*

───────────────────────────

Before: CALABRESI, CABRANES, HALL, *Circuit Judges*.

Plaintiff-Appellee J.D. Salinger (now represented by trustees of the J.D. Salinger Literary Trust) brought suit in the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*) against Defendants-Appellants Fredrik Colting, Windupbird Publishing, Ltd., Nicotext A.B., and ABP Inc. claiming copyright infringement and unfair competition. Salinger alleged that Colting's novel *60 Years Later Coming Through the Rye* is derivative of Salinger's novel *The Catcher in the Rye*. The District Court granted Salinger's motion for a preliminary injunction; Defendants appeal. We hold that the Supreme Court's decision in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), which articulated a four-factor test as to when an injunction may issue, applies with equal force to preliminary injunctions issued on the basis of alleged copyright infringement. Therefore, although we conclude that the District Court properly determined that Salinger has a likelihood of success on the merits, we

vacate the District Court's order and remand the case to the District Court to apply the *eBay* standard.

MARCIA BETH PAUL, Davis Wright Tremaine LLP, New York, N.Y., *for Plaintiffs-Appellees*.

EDWARD H. ROSENTHAL (Maura J. Wogan, Jessie F. Beeber, Cameron A. Myler, Marisa Sarig, *on the brief*), Frankfurt Kurnit Klein & Selz P.C., New York, N.Y., *for Defendants-Appellants*.

David E. Kendall, Thomas G. Hentoff, Kannon K. Shanmugam, Hannah M. Stott-Bumsted, Scott K. Dasovich, Williams & Connolly LLP, Washington, DC, *for Amicus Curiae Motion Picture Association of America, Inc. in support of Plaintiffs-Appellees*.

Anthony T. Falzone, Julie A. Ahrens, Sarah H. Pearson, Stanford Law School, Center for Internet & Society, Stanford, CA; Rebecca Tushnet, Georgetown University Law Center, Washington, DC; Jennifer M. Urban, Samuelson Law, Technology & Public Policy Clinic, University of California, Berkeley, School of Law, Berkeley, CA, *for Amici Curiae American Library Association, Association of Research Libraries, Association of College and Research Libraries, The Organization for Transformative Works and the Right to Write Fund in support of Defendants-Appellants*.

George Freeman, Itai Maytal, The New York Times Company, Legal Department, New York, NY (Barbara W. Wall, Gannett Co., Inc., McLean, VA; Karen Flax, Tribune Company, Chicago, IL, *of counsel*), *for Amici Curiae The New York Times Company, Gannett Co., Inc., and Tribune Company in support of Defendants-Appellants*.

Deepak Gupta, Gregory A. Beck, Public Citizen Litigation Group, Washington, DC; Dan Hunter, New York Law School, New York, NY, *for Amicus Curiae Public Citizen, Inc.*

CALABRESI, *Circuit Judge*:

Defendants-Appellants Fredrik Colting, Windupbird Publishing Ltd., Nicotext A.B., and ABP, Inc. appeal from an order of the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*) granting Plaintiff-Appellee J.D. Salinger's[1] motion for a preliminary injunction. The District Court's judgment is VACATED and REMANDED.

## BACKGROUND

### I.

Salinger published *The Catcher in the Rye* (hereinafter "*Catcher*") in 1951. *Catcher* is a coming-of-age story about a disaffected sixteen-year-old boy, Holden Caulfield, who after being expelled from prep school wanders around New York City for several days before returning home. The story is told from Holden's perspective and in his "own strange, wonderful, language." Nash Burger, *Books of the Times*, N.Y. Times, July 16, 1951. Holden's adventures highlight the contrast between his cynical portrait of a world full of "phonies" and "crooks" and his love of family, particularly his younger sister Phoebe and his deceased younger brother Allie, along with his developing romantic interest in a childhood friend, Jane Gallagher. While his affection for these individuals pushes him throughout the novel toward human contact, his disillusionment with humanity inclines him toward removing himself from society and living out his days as a recluse. He ultimately abandons his decision to live as recluse when Phoebe insists on accompanying him on his self-imposed exile.

*Catcher* was an instant success. It was on the *New York Times* best-seller list for over seven months and sold more than one million copies in its first ten years. Polly Morrice, *Descended from Salinger*, N.Y. Times, March 23, 2008. To date it has sold over 35 million

---

[1] We note that Plaintiff-Appellee J.D. Salinger died during the pendency of this appeal. In a February 18, 2010 order, we granted the motion of Colleen M. Salinger and Matthew R. Salinger, trustees of the J.D. Salinger Literary Trust, to be substituted for Salinger as Appellees. For reasons of convenience, however, we will continue to refer to Salinger as "Plaintiff" or "Appellee" in this opinion.

copies, Westberg Aff. ¶ 2, influenced dozens of literary works, and been the subject of "literally reams of criticism and comment," Appellees' Br. 5. Literary critic Louis Menand has identified *Catcher* "rewrites" as a "literary genre all its own."[2] *Holden at Fifty: "The Catcher in the Rye" and What It Spawned*, The New Yorker, Oct. 1, 2001. The Holden character in particular has become a cultural icon of "adolescent alienation and rebellion," Appellants' Br. 7, a "moral genius" "who refuses to be socialized." Menand, *Holden at Fifty*, *supra*.

Inseparable from the *Catcher* mystique is the lifestyle of its author, Salinger.[3] Shortly after publishing *Catcher*, Salinger did what Holden did not do: he removed himself from society. Salinger has not published since 1965 and has never authorized any new narrative involving Holden or any work derivative of *Catcher*. Westberg Aff. ¶¶ 15, 16. Other than a 1949 film adaptation of one of his early short stories, Salinger has never permitted, and has explicitly instructed his lawyers not to allow, adaptations of his works. *Id.* ¶ 16. He has, however, remained in the public spotlight through a series of legal actions to protect his intellectual property. *Id.* ¶ 19. Salinger has registered and duly renewed his copyright in *Catcher* with the U.S. Copyright Office.

## II.

Defendant-Appellant Fredrik Colting wrote *60 Years Later: Coming Through the Rye* (hereinafter "*60 Years Later*") under the pen name "John David California." Colting published *60 Years Later* with his own publishing company, Defendant-Appellant Windupbird Publishing, Ltd., in England on May 9, 2009. Copies were originally scheduled to be available in the United

---

[2] Menand includes among *Catcher* "rewrites" Sylvia Plath's *The Bell Jar* (1963), Hunter S. Thompson's *Fear and Loathing in Las Vegas* (1971), Jay McInerney's *Bright Lights, Big City* (1984), and Dave Eggers's *A Heartbreaking Work of Staggering Genius* (2000).

[3] Salinger has conceded that *Catcher* is "sort of" autobiographical. Paul Alexander, *Salinger: A Biography* 177-78 (1999).

States on September 15, 2009. Westberg Aff. ¶ 2. Colting did not seek Salinger's permission to publish *60 Years Later*. *Id*. ¶ 3.

*60 Years Later* tells the story of a 76-year-old Holden Caulfield, referred to as "Mr. C," in a world that includes Mr. C's 90-year-old author, a "fictionalized Salinger."[4] The novel's premise is that Salinger has been haunted by his creation and now wishes to bring him back to life in order to kill him. Unsurprisingly, this task is easier said than done. As the story progresses, Mr. C becomes increasingly self-aware and able to act in ways contrary to the will of Salinger. After a series of misadventures, Mr. C travels to Cornish, New Hampshire, where he meets Salinger in his home. Salinger finds he is unable to kill Mr. C and instead decides to set him free. The novel concludes with Mr. C reuniting with his younger sister, Phoebe, and an estranged son, Daniel.

In bringing this suit, Salinger underscores the extensive similarities between *60 Years Later* and *Catcher*. First, Mr. C is Holden Caulfield. Mr. C narrates like Holden, references events that happened to Holden, and shares many of Holden's notable eccentricities. Appellees' Br. 8. Also, Mr. C's adventures parallel those of Holden. Both characters leave an institution, wander around New York City for several days, reconnect with old friends, find happiness with Phoebe, and ultimately return to a different institution. Finally, within these broader structural similarities, the novels contain similar scenes, such as a climactic carousel scene. *Id.* 9-10.

Salinger also cites Defendants' efforts to market *60 Years Later* as a sequel to *Catcher*. The back cover of the United Kingdom edition describes the novel as "a marvelous sequel to one of our most beloved classics." Westberg Aff. ¶ 32. In a 2009 interview in the *Guardian*, Colting describes *60 Years Later* as "[j]ust like the first novel . . . . He's still Holden Caulfield, and has a

---

[4] Appellants concede that Mr. C is Holden Caulfield and that the unnamed author living in Cornish, New Hampshire is a "fictionalized Salinger." Special App. 6-7 (Hr'g Tr. 16-17, June 17, 2009); Appellants' Br. 10.

-5-

particular view on things." Alison Flood, *Catcher in the Rye Sequel Published, but Not by Salinger*, Guardian, May 14, 2009.

Colting responds that *60 Years Later* is not, and was never intended to be, a sequel to *Catcher*. Rather, Colting claims that it is a "critical examination of the character Holden and the way he is portrayed in [*Catcher*], the relationship between Salinger and his iconic creation, and the life of a particular author as he grows old but remains imprisoned by the literary character he created." Appellants' Br. 9-10. In support of this claim, Colting first emphasizes that a main character in *60 Years Later*—Salinger himself, who narrates portions of the novel—does not appear in *Catcher*. Next, he explains how the Mr. C character evolves from a two-dimensional and absurd version of a sixteen-year-old Holden into a real person with a rich life completely apart from *Catcher*. Finally, he relies upon the declarations of two literary experts. Martha Woodmansee, a professor of English and law at Case Western Reserve University, described *60 Years Later* as a "work of meta-commentary" that "pursues critical reflection on J.D. Salinger and his masterpiece [*Catcher*] just as do the articles that literary scholars conventionally write and publish in scholarly journals, but it casts its commentary in an innovative 'post modern' form, specifically, that of a novel." Woodmansee Decl. ¶ 9. Robert Spoo, a professor at the University of Tulsa College of Law, found *60 Years Later* to be a "sustained commentary on and critique of *Catcher*, revisiting and analyzing the attitudes and assumptions of the teenaged Holden Caulfield. In this respect, [*60 Years Later*] is similar to a work of literary criticism." Spoo Decl. ¶ 7.

**III.**

On July 1, 2009, the District Court granted Salinger's motion for a preliminary injunction, barring Defendants from "manufacturing, publishing, distributing, shipping,

advertising, promoting, selling, or otherwise disseminating any copy of [*60 Years Later*], or any portion thereof, in or to the United States." *Salinger v. Colting*, 641 F. Supp. 2d 250, 269 (S.D.N.Y. 2009). In doing so, it found that (1) Salinger has a valid copyright in *Catcher* and the Holden Caulfield character, (2) absent a successful fair use defense, Defendants have infringed Salinger's copyright in both *Catcher* and the Holden Caulfield character, (3) Defendants' fair use defense is likely to fail, and (4) a preliminary injunction should issue.

The District Court disposed of the first two issues in its decision's introduction. Defendants did not contest that Salinger has a valid copyright in *Catcher*. And regarding the Holden character, the Court stated that the character is "sufficiently delineated so that a claim for infringement will lie." *Id.* at 254. The Court elaborated on this finding in a June 17, 2009 hearing:

> Holden Caulfield is quite delineated by word. It is a portrait by words. It is something that is obviously seen to be of value since the effort is made [by defendants] to recall everything that the character in the book does. . . . It is difficult, in fact, to separate Holden Caulfield from the book.

Special App. 8 (Hr'g Tr. 24). Having found a valid copyright in both *Catcher* and the Holden character, the Court concluded that "there is substantial similarity between *Catcher* and [*60 Years Later*], as well as between the character Holden Caulfield from *Catcher*, and the character Mr. C from [*60 Years Later*], such that it was an unauthorized infringement of Plaintiff's copyright." *Salinger*, 641 F. Supp. 2d at 254.

The District Court next concluded that Defendants' fair use defense is likely to fail and that therefore Salinger has established a *prima facie* case of copyright infringement. In its consideration of the four statutory factors, the Court found that not one supports Defendants' claim of fair use. *Id.* at 255.

Regarding the first factor, the "purpose and character of the use," 17 U.S.C. § 107(1), the Court held that *60 Years Later* is not sufficiently "transformative" of *Catcher*, the Holden character, or Salinger, *id.* at 256 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). One recognized form of transformative value, the Court noted, is parody, which requires a "reasonably discernable rejoinder or specific criticism of any character or theme." *Id.* at 258. The Court found that *60 Years Later* does not parody *Catcher* or the Holden character, and although it might parody Salinger, that is insufficient because according to the Supreme Court's decision in *Campbell*, 510 U.S. at 580, parody must critique or comment on the work itself, *Salinger*, 641 F. Supp. 2d at 256-57.

The District Court similarly concluded that *60 Years Later* does not have sufficient non-parodic transformative value. Although *60 Years Later*'s comment on Salinger himself "has some transformative value," *id.* at 262, the Court found that it is insufficient to render the work as a whole transformative for three reasons. First, according to Colting's public statements, his purpose for writing *60 Years Later* was not to comment on Salinger but to write a *Catcher* sequel. *Id.* at 259-60 & n.3 Second, Salinger is a "minor or supporting character" in *60 Years Later*. *Id.* at 262. And third, the ratio of borrowed to transformative elements in *Catcher* is too high to render the entire work transformative. *Id.* at 262-63. Finally, the Court observed that *60 Years Later*'s commercial nature further cuts against Defendants on the "purpose and character of the use" factor. *Id.* at 263.

Addressing the second and third factors, *see* 17 U.S.C. § 107(2)-(3), the District Court held with respect to the "nature of the copyrighted work" that *Catcher* is a "'creative expression for public dissemination [that] falls within the core of the copyright's protective purposes.'" *Id.* at 263 (quoting *Campbell*, 510 U.S. at 586). It then found as to "the amount and substantiality of

-8-

the portion used in relation to the copyrighted work as a whole" that Colting took "well more from *Catcher*, in both substance and style, than is necessary for the alleged transformative purpose of criticizing Salinger and his attitudes and behavior." *Id.*

The District Court went on to conclude that the fourth factor, "the effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4), weighs "slightly" in Salinger's favor, *Salinger*, 641 F. Supp. 2d at 267-68. The Court acknowledged that *60 Years Later* is unlikely to impact the sales of *Catcher* itself, but it found that an unauthorized sequel might undermine the potential market for an authorized *Catcher* sequel, whether through loss of the novelty of a sequel or through confusion as to which of the sequels is the authorized one. Although the Court recognized that Salinger has publicly disclaimed any intention of authorizing a sequel, the Court noted that Salinger has the right to change his mind and, even if he has no intention of changing his mind, there is value in the right *not* to authorize derivative works. *Id.*

Having made this determination, the District Court turned to whether a preliminary injunction should issue. According to the Court:

> Under Rule 65, to obtain a preliminary injunction a party must demonstrate: (1) that it will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor.

*Id.* at 254 (quotation marks and alterations omitted). Given its findings, the Court deemed the only remaining question to be whether Salinger had shown that he would be irreparably harmed if an injunction was not granted. Because Salinger had established a *prima facie* case of copyright infringement, and in light of how the District Court, understandably, viewed this Court's precedents, the District Court presumed irreparable harm without discussion. *Id.* at 268

(citing *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 66 (2d Cir. 1996)). In a footnote, the Court stated:

> Although Defendants contend that *eBay, Inc. v. MercExchange*, 547 U.S. 388 . . . (2006), undermines the validity of this presumption, that case dealt only with the presumption of irreparable harm in the patent law context, and thus is not controlling in the absence of Second Circuit precedent applying it in the copyright context.

*Id.* at 268 n.6.

**DISCUSSION**

We hold that, although the District Court applied our Circuit's longstanding standard for preliminary injunctions in copyright cases, our Circuit's standard is inconsistent with the "test historically employed by courts of equity" and has, therefore, been abrogated by *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006).

**I.**

The Copyright Act of 1976 authorizes courts to "grant temporary and final injunctions on such terms as [they] may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). And, as the District Court stated, this Court has long issued preliminary injunctions in copyright cases upon a finding of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *See, e.g.*, *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004); *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir. 1996); *Video Trip Corp. v. Lightning Video, Inc.*, 866 F.2d 50, 52 (2d Cir. 1989); *Wainwright Sec., Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977).[5]

---

[5] The overwhelming majority of decisions addressing injunction motions have focused solely on whether the plaintiff has shown a likelihood of success on the merits and irreparable harm, rather than on balancing the

Thus, once a plaintiff establishes a likelihood of success on the merits, the only additional requirement is a showing that the plaintiff will be irreparably harmed if the preliminary injunction does not issue. And traditionally, this Court has presumed that a plaintiff likely to prevail on the merits of a copyright claim is also likely to suffer irreparable harm if an injunction does not issue. *See, e.g.*, *Richard Feiner & Co., Inc. v. Turner Entm't Co.*, 98 F.3d 33, 34 (2d Cir. 1996); *ABKCO Music*, 96 F.3d at 64; *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985).

This Court has applied this presumption in several ways. Some decisions have interpreted the presumption to mean that a plaintiff likely to prevail on the merits does not need to make a detailed showing of irreparable harm. *See, e.g.*, *Wainwright*, 558 F.2d at 94 ("In copyright cases, . . . if probable success—a prima facie case of copyright infringement—can be shown, the allegations of irreparable injury need not be very detailed, because such injury can normally be presumed when a copyright is infringed."); *Robert Stigwood Group Ltd. v. Sperber*, 457 F.2d 50, 55 (2d Cir. 1972); *Am. Metro. Enters. of N.Y. v. Warner Bros. Records, Inc.*, 389 F.2d 903, 905 (2d Cir. 1968); *Rushton v. Vitale*, 218 F.2d 434, 436 (2d Cir. 1955). Other cases have discussed the presumption as though it applies automatically and is irrebuttable. *See, e.g.*, *Rice v. Am. Program Bureau*, 446 F.2d 685, 688 (2d Cir. 1971) ("It is likewise well settled that when a prima facie case is made out a preliminary injunction should issue without the showing of irreparable injury . . . ."); *Am. Code Co. v. Bensinger*, 282 F. 829, 834 (2d Cir. 1922) ("In cases of infringement of copyright, an injunction has always been recognized as a proper remedy, because of the inadequacy of the legal remedy."). A few decisions, by contrast, have found the presumption rebuttable where the plaintiff delayed in bringing the action seeking an

hardships. *But see Random House, Inc. v. Rosetta Books L.L.C.*, 283 F.3d 490, 492 (2d Cir. 2002) (considering the balance of hardships but finding the standard unsatisfied); *Consumers Union of U.S., Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1054 (2d Cir. 1983) (same).

-11-

injunction.  *See Richard Feiner*, 98 F.3d at 34; *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir. 1994); *Bourne Co. v. Tower Records, Inc.*, 976 F.2d 99, 101 (2d Cir. 1992).

Under any of these articulations, however, this Court has nearly always issued injunctions in copyright cases as a matter of course upon a finding of likelihood of success on the merits.  *Cf.* Mark A. Lemley & Eugene Volokh, *Freedom of Speech and Injunctions in Intellectual Property Cases*, 48 Duke L.J. 147, 159 (1998) ("The ostensibly four-factor test collapses . . . to a simple inquiry into likelihood of success on the merits.  If that can be demonstrated, a preliminary injunction is the expected remedy." (footnotes omitted)).  *But see Am. Visuals Corp. v. Holland*, 219 F.2d 223 (2d Cir. 1955) (affirming denial of injunction because, among other reasons, plaintiff failed to show that money damages would be inadequate).

**II.**

Defendants do not claim that the District Court failed to apply this Circuit's longstanding preliminary injunction standard.  Rather, they argue both that this standard is an unconstitutional prior restraint on speech and that it is in conflict with the Supreme Court's decision in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).  We agree that *eBay* abrogated parts of this Court's preliminary injunction standard in copyright cases, and accordingly, this case must be remanded to the District Court to reevaluate Salinger's preliminary injunction motion.  In light of that holding, we need not decide whether the preliminary injunction issued by the District Court constituted an unconstitutional prior restraint on speech.

*eBay* involved the propriety of a permanent injunction after a finding of patent infringement.  The United States District Court for the Eastern District of Virginia had ostensibly

-12-

applied the traditional four-factor test for determining whether a permanent injunction should issue:

> Issuance of injunctive relief against [the defendants] is governed by traditional equitable principles, which require consideration of (i) whether the plaintiff would face irreparable injury if the injunction did not issue, (ii) whether the plaintiff has an adequate remedy at law, (iii) whether granting the injunction is in the public interest, and (iv) whether the balance of the hardships tips in the plaintiff's favor.

*MercExchange, L.L.C. v. eBay, Inc.*, 275 F. Supp. 2d 695, 711 (E.D. Va. 2003) (quotation marks omitted). In its application of this test, however, the district court "appeared to adopt certain expansive principles suggesting that injunctive relief could not issue in a broad swath of cases." *eBay*, 547 U.S. at 393. Specifically, the district court found that "the evidence of the plaintiff's willingness to license its patents, its lack of commercial activity in practicing the patents, and its comments to the media as to its intent with respect to enforcement of its patent rights, are sufficient to rebut the presumption that it will suffer irreparable harm if an injunction does not issue." *eBay*, 275 F. Supp. 2d at 712. The Federal Circuit reversed on appeal, applying a "general rule . . . that a permanent injunction will issue once infringement and validity have been adjudged." *MercExchange, L.L.C. v. eBay, Inc.*, 401 F.3d 1323, 1338 (Fed. Cir. 2005). The court cited for this rule *Richardson v. Suzuki Motor Co*, which equates the "general rule" with a rule that "[i]n matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement." 868 F.2d 1226, 1246-47 (Fed. Cir. 1989) (quoting *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 389, 390 (Fed. Cir. 1987)).

Writing for a unanimous Court, Justice Thomas held that neither the district court nor the Federal Circuit correctly applied the equitable factors:

According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay*, 547 U.S. at 391. Although the courts below had articulated the correct standard, they had both, albeit in different ways, applied "broad classifications" that were inconsistent with traditional equitable principles. *Id.* at 393.

This Court has not directly addressed the scope of *eBay*.[6] And district courts in our Circuit have split on *eBay*'s reach. *Compare, e.g.*, *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 319-20 n.1 (S.D.N.Y. 2008) (holding that *eBay* only applies to permanent injunctions in patent cases), *with Microsoft Corp. v. AGA Solutions, Inc.*, 589 F. Supp. 2d 195, 204 (E.D.N.Y. 2008) (applying *eBay* in a permanent injunction trademark case). Two district court decisions have noted that the scope of *eBay* remains an open question in this Circuit and have decided the cases before them without determining whether the *eBay* or pre-*eBay* standard applied. *See*

---

[6] In *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 162 (2d Cir. 2007), this Court applied the pre-*eBay* standard where the plaintiff sought a preliminary injunction claiming false advertising under the Lanham Act. But whether *eBay* affected that standard was neither raised by the parties nor discussed by either the district court or this Court on appeal. Accordingly, *Time Warner Cable* is not binding precedent on this issue. *See Webster v. Fall*, 266 U.S. 507, 511 (1924). Similarly, the Federal Circuit has, without discussion, applied a pre-*eBay* standard in one post-*eBay* copyright case involving a preliminary injunction. *Jacobsen v. Katzer*, 535 F.3d 1373, 1378 (Fed. Cir. 2008) (applying the Ninth Circuit's pre-*eBay* standard); *see also Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007) (applying the pre-*eBay* standard, without discussion, in a preliminary injunction trademark case). By contrast, the First, Eleventh, and Fourth Circuits have applied *eBay* in copyright cases. *See CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008); *Peter Letterese & Assocs. v. World Inst. of Scientology Enters. Int'l*, 533 F.3d 1287, 1323 (11th Cir. 2008); *Christopher Phelps & Assocs. v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) ("The Supreme Court [in *eBay*] reaffirmed the traditional showing that a plaintiff must make to obtain a permanent injunction in any type of case, including a patent or copyright case[.]"); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1208-10 (C.D. Cal. 2007) (extensively discussing the issue and concluding that *eBay* applies in the permanent injunction copyright context). *See generally Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1306 (D. Utah 2008) (collecting cases and summarizing that "[d]espite the lack of clear direction from the Federal Circuit, the majority of district courts to directly analyze the issue have held that *eBay* did away with the presumption of irreparable harm in preliminary injunction cases involving patents").

*Gayle Martz, Inc. v. Sherpa Pet Group, L.L.C.*, 651 F. Supp. 2d 72, 85 (S.D.N.Y. 2009); *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 552 (S.D.N.Y. 2008).

We hold today that *eBay* applies with equal force (a) to preliminary injunctions (b) that are issued for alleged copyright infringement. First, nothing in the text or the logic of *eBay* suggests that its rule is limited to patent cases. On the contrary, *eBay* strongly indicates that the traditional principles of equity it employed are the presumptive standard for injunctions in any context.[7] Significantly, after laying out the four-factor test quoted above, *eBay* cites two cases: *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982), which involved a permanent injunction after a finding that the defendant violated the Federal Water Pollution Control Act, and *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987), which involved a preliminary injunction in which the plaintiff alleged that the defendant was violating § 810 of the Alaska National Interest Lands Conservation Act, *eBay*, 547 U.S. at 391. The Court then looked to whether the logic of these cases should apply in the patent context. Reasoning that "'a major departure from the long tradition of equity practice should not be lightly implied,'" *id.* at 391 (quoting *Weinberger*, 456 U.S. at 320), the Court concluded that "[t]hese familiar principles apply with equal force to disputes arising under the Patent Act," *id*.

Moreover, the Court expressly relied upon copyright cases in reaching its conclusion. In response to the Federal Circuit's reasoning that the Patent Act's right to exclude justifies the preference for injunctive relief, the Court stated that "the creation of a right is distinct from the provision of remedies for violations of that right." *Id.* at 392. In support of this distinction, it

---

[7] Indeed, although our holding here is limited to preliminary injunctions in the context of copyright cases, *eBay*'s central lesson is that, unless Congress intended a "major departure from the long tradition of equity practice," a court deciding whether to issue an injunction must not adopt "categorical" or "general" rules or presume that a party has met an element of the injunction standard. 547 U.S. at 391-94 (quotation marks omitted). Therefore, although today we are not called upon to extend *eBay* beyond the context of copyright cases, we see no reason that *eBay* would not apply with equal force to an injunction in *any* type of case.

noted that "[l]ike a patent owner, a copyright holder possesses the right to exclude others from using his property." *Id.* (quotation marks omitted). It further noted that "[l]ike the Patent Act, the Copyright Act provides that courts 'may' grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of copyright.'" *Id.* (quoting 17 U.S.C. § 502(a)). Because of these similarities, the Court emphasized that it "has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed." *Id.* at 392-93 (citing *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 505 (2001); *Campbell*, 510 U.S. at 578 n.10, *Dun v. Lumbermen's Credit Ass'n.*, 209 U.S. 20, 23-24 (1908)). Whatever the underlying issues and particular circumstances of the cases cited by the Court in *eBay*, it seems clear that the Supreme Court did not view patent and copyright injunctions as different in kind, or as requiring different standards.

Nor does *eBay*, as reinforced by the Supreme Court's very recent decision in *Winter v. Natural Resources Defense Counsel*, 129 S. Ct. 365 (2008), permit an easier grant of a preliminary than of a permanent injunction. First, as mentioned above, one of the two cases *eBay* relied upon in stating the traditional equitable test involved a preliminary injunction. *See Amoco Prod.*, 480 U.S. at 542; *see also id.* at 546 n.12 ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."). Second, in *Winter*, the Supreme Court in fact applied *eBay* in a case involving a preliminary injunction. Reversing the Ninth Circuit, which had preliminarily enjoined the Navy's use of sonar in training exercises based on a "strong" likelihood of success on the merits and a "possibility" of irreparable harm, the Court stated: "Issuing a preliminary injunction based only on a possibility

of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 129 S. Ct. at 375-76. And using broad, unqualified language, the Court discussed the preliminary injunction standard as follows:

> A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.

*Id.* at 376-77 (quotation marks and citations omitted) (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218-19 (2008); *Amoco Prod.*, 480 U.S. at 542; *Weinberger*, 456 U.S. at 312).

**III.**

This Court's pre-*eBay* standard for when preliminary injunctions may issue in copyright cases is inconsistent with the principles of equity set forth in *eBay*. The Supreme Court's decision in *Winter* tells us that, at minimum, we must consider whether "irreparable injury is *likely* in the absence of an injunction," we must "'balance the competing claims of injury,'" and we must "'pay particular regard for the public consequences in employing the extraordinary remedy of injunction[8].'" 129 S. Ct. at 375-77 (quoting *Amoco,* 480 U.S. at 542; *Weinberger*, 456 U.S. at 312). Therefore, in light of *Winter* and *eBay*, we hold that a district court must undertake the following inquiry in determining whether to grant a plaintiff's motion for a preliminary injunction in a copyright case. First, as in most other kinds of cases in our Circuit, a

---

[8] This Court has rarely considered the public's interest before deciding whether an injunction should issue. Although decisions have referenced the public's interest in passing, *see Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004) (quoting 4 *Nimmer on Copyright* § 14.06 for the proposition that "where great public injury would be worked by an injunction . . . the courts could . . . award damages or a continuing royalty instead of an injunction"); *New Era Publ'ns Int'l., ApS v. Henry Holt, Co.*, 884 F.2d 659, 664 (2d Cir. 1989) (Newman, *J.*, dissenting from denial of rehearing in banc) ("[T]he public interest is always a relevant consideration for a court deciding whether to issue an injunction."), the public's interest has not in the past been a formal factor in this Court's standard for when to issue copyright injunctions.

court may issue a preliminary injunction in a copyright case only if the plaintiff has demonstrated "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor." *NXIVM Corp.*, 364 F.3d at 476; *see also, e.g.*, *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009). Second, the court may issue the injunction only if the plaintiff has demonstrated "that he is likely to suffer irreparable injury in the absence of an injunction." *Winter*, 129 S. Ct. at 374. The court must not adopt a "categorical" or "general" rule or presume that the plaintiff will suffer irreparable harm (unless such a "departure from the long tradition of equity practice" was intended by Congress). *eBay*, 547 U.S. at 391, 393-94. Instead, the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *eBay*, 547 U.S. at 391; *see also Winter*, 129 S. Ct. at 375 (quoting 11A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2948.1 (2d ed. 1995), for the proposition that an applicant for a preliminary injunction "must demonstrate that in the absence of a preliminary injunction, 'the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered'"). Third, a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor. *Winter*, 129 S. Ct. at 374; *eBay*, 547 U.S. at 391. Finally, the court must ensure that the "public interest would not be disserved" by the issuance of a preliminary injunction. *eBay*, 547 U.S. at 391; *accord Winter*, 129 S. Ct. at 374.

A.

-18-

The first consideration in the preliminary injunction analysis is the probability of success on the merits.  In gauging this, we emphasize that courts should be particularly cognizant of the difficulty of predicting the merits of a copyright claim at a preliminary injunction hearing.  *See* Lemley & Volokh, *supra*, at 201-02 ("[When deciding whether to grant a TRO or a preliminary injunction," the judge has limited time for contemplation.  The parties have limited time for briefing.  Preparation for a typical copyright trial, even a bench trial, generally takes many months; the arguments about why one work isn't substantially similar in its expression to another, or about why it's a fair use of another, are often sophisticated and fact-intensive, and must be crafted with a good deal of thought and effort.").  This difficulty is compounded significantly when a defendant raises a colorable fair use defense.  "Whether [a] taking[] will pass the fair use test is difficult to predict.  It depends on widely varying perceptions held by different judges."  Pierre N. Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1132 (1990); *see also Campbell*, 510 U.S. at 578 n.10 (noting that "the fair use enquiry often requires close questions of judgment").

B.

Next, the court must consider whether the plaintiff will suffer irreparable harm in the absence of a preliminary injunction, and the court must assess the balance of hardships between the plaintiff and defendant.  Those two items, both of which consider the harm to the parties, are related.  The relevant harm is the harm that (a) occurs to the parties' legal[9] interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction.  The plaintiff's interest is, principally, a property interest in the copyrighted material.  *See* *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 661 (1834).  But as the Supreme Court has suggested, a

---

[9] As Judge Leval noted in *New Era Publications International, ApS v. Henry Holt & Co.*, "the justification of the copyright law is the protection of the *commercial* interest of the artist/author.  It is not to coddle artistic vanity or to protect secrecy, but to stimulate creation by protecting its rewards." 695 F. Supp. 1493, 1526 (S.D.N.Y. 1988).

copyright holder might also have a First Amendment interest in *not* speaking. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 559 (1985). The defendant to a copyright suit likewise has a property interest in his or her work to the extent that work does not infringe the plaintiff's copyright. And a defendant also has a core First Amendment interest in the freedom to express him- or herself, so long as that expression does not infringe the plaintiff's copyright.

But the above-identified interests are relevant only to the extent that they are not remediable after a final adjudication. Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer. In the context of copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion. *See Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96-97 (2d Cir. 2002). And courts have tended to issue injunctions in this context because "to prove the loss of sales due to infringement is . . . notoriously difficult." *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971) (Friendly, *C.J.*). Additionally, "[t]he loss of First Amendment freedoms," and hence infringement of the right *not* to speak, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).[10]

After *eBay*, however, courts must not simply presume irreparable harm. *See eBay*, 547 U.S. at 393. Rather, plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm. This is not to say that most copyright plaintiffs who have shown a likelihood of success on the merits would not be irreparably harmed

---

[10] *But cf. Freedman v. Maryland*, 380 U.S. 51, 59 (1965) (finding permissible pre-adjudication restraint where, among other things, the time between the restraint and the final adjudication is brief).

absent preliminary injunctive relief. As an empirical matter, that may well be the case, and the historical tendency to issue preliminary injunctions readily in copyright cases may reflect just that. *See* H. Tomás Gómez-Arostegui, *What History Teaches Us About Copyright Injunctions and the Inadequate-Remedy-at-Law Requirement*, 81 S. Cal. L. Rev. 1197, 1201 (2008) (concluding, after a thorough historical analysis, that "the historical record suggests that in copyright cases, legal remedies were deemed categorically inadequate"). As Chief Justice Roberts noted, concurring in *eBay*:

> From at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases. This "long tradition of equity practice" is not surprising, given the difficulty of protecting a right to *exclude* through monetary remedies . . . . This historical practice, as the Court holds, does not *entitle* a patentee to [an] . . . injunction or justify a *general rule* that such injunctions should issue. . . . At the same time, there is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate. . . . When it comes to discerning and applying those standards, in this area as others, a page of history is worth a volume of logic.

547 U.S. at 395 (quotation marks omitted).

But by anchoring the injunction standard to equitable principles, albeit with one eye on historical tendencies, courts are able to keep pace with innovation in this rapidly changing technological area. Justice Kennedy, responding to Justice Roberts, made this very point as to patent injunctions in his *eBay* concurrence. Although the "lesson of the historical practice . . . is most helpful and instructive when the circumstances of a case bear substantial parallels to litigation the courts have confronted before[,] . . . in many instances the nature of the patent being enforced and the economic function of the patent holder present considerations quite unlike earlier cases." *Id.* at 396. Justice Kennedy concluded that changes in the way parties use patents may now mean that "legal damages [are] sufficient to compensate for the infringement." *Id.*

## C.

Finally, courts must consider the public's interest. The object of copyright law is to promote the store of knowledge available to the public. But to the extent it accomplishes this end by providing individuals a financial incentive to contribute to the store of knowledge, the public's interest may well be already accounted for by the plaintiff's interest.

The public's interest in free expression, however, is significant and is distinct from the parties' speech interests. *See Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 8 (1986). "By protecting those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving information." *Id.* Every injunction issued before a final adjudication on the merits risks enjoining speech protected by the First Amendment. Some uses, however, will so patently infringe another's copyright, without giving rise to an even colorable fair use defense, that the likely First Amendment value in the use is virtually nonexistent.

## IV.

Because the District Court considered only the first of the four factors that, under *eBay* and our holding today, must be considered before issuing a preliminary injunction, we vacate and remand the case. But in the interest of judicial economy, we note that there is no reason to disturb the District Court's conclusion as to the factor it did consider—namely, that Salinger is likely to succeed on the merits of his copyright infringement claim.

Most of the matters relevant to Salinger's likelihood of success on the merits are either undisputed or readily established in his favor. Thus, Defendants do not contest either that Salinger owns a valid copyright in *Catcher* or that they had actual access to *Catcher*. And while they argue only that *60 Years Later* and *Catcher* are not substantially similar, that contention is

manifestly meritless.[11] "In considering substantial similarity between two items, we review the district court's findings *de novo*—not on the clearly erroneous standard—because what is required is only a visual comparison of the works, rather than credibility, which we are in as good a position to decide as was the district court." *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991). And for largely the same reasons as the District Court, we affirm the District Court's finding that *Catcher* and *60 Years Later* are substantially similar.

More serious is Defendants' assertion of a fair use defense. And at this preliminary stage, we agree with the District Court that Defendants will not likely be able to make out such a defense. The District Court in its discussion of fair use focused on the first statutory factor: the "purpose and character of the use." 17 U.S.C. § 107(1). In doing this, the Court found that "[i]t is simply not credible for Defendant Colting to assert now that his primary purpose was to critique Salinger and his persona, while he and his agents' previous statements regarding the book discuss no such critique, and in fact reference various other purposes behind the book." *Salinger*, 641 F. Supp. 2d at 262. Such a finding is not clear error. *See Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985) (a district court's findings regarding witness credibility are to be reviewed for clear error). It may be that a court can find that the fair use factor favors a defendant even when the defendant and his work lack a transformative *purpose*. We need not decide that issue here, however, for when we consider the District Court's credibility finding together with all the other facts in this case, we conclude, with the District Court, that Defendants are not likely to prevail in their fair use defense.[12]

---

[11] We find it unnecessary to decide whether Salinger owns a valid copyright in the character Holden Caulfield.

[12] As noted above, since the commencement of these proceedings, Plaintiff-Appellee J.D. Salinger has died. On remand, nothing precludes the District Court from considering that or any other additional evidence that may bear on the legal issues to be determined with respect to the preliminary injunction and the final merits. Moreover, while we are remanding for further consideration of a preliminary injunction, we wish to make clear that nothing we have

**CONCLUSION**

In this preliminary injunction case, the District Court erred by not applying the equitable standard outlined by the Supreme Court in *eBay, Inc. v. MercExchange, L.L.C.* and *Winter v. Natural Resources Defense Council*. Accordingly, we vacate and remand for further proceedings consistent with this opinion. The preliminary injunction will stay in place for ten days following the issuance of the mandate so that Appellees will have an opportunity to apply for a temporary restraining order pending the rehearing of the motion for a preliminary injunction.

---

said is intended to preclude the District Court on remand from consolidating its further consideration of the preliminary injunction application with the trial on the merits. *See* Fed. R. Civ. P. 65(a)(2).